404 So.2d 981 (1981)
Deborah Kaye HARDY et al., Plaintiffs-Appellants-Appellees,
v.
STATE of Louisiana, Through DEPARTMENT OF HIGHWAYS et al., Defendants-Appellees-Appellants.
No. 8276.
Court of Appeal of Louisiana, Third Circuit.
August 13, 1981.
Rehearings Denied October 14, 1981.
*982 Doran & Kivett by William T. Kivett, Baton Rouge, for defendant-appellant, State of Louisiana.
Watson, Murchison, Crews, Arthur & Corkern, William P. Crews, Jr., Natchitoches, for defendant-appellee, City of Natchitoches.
Troy E. Bain, Shreveport, for defendant-appellee, Shirley Campbell.
Kelly & Salim, Robert L. Salim, Natchitoches, for plaintiff-appellee, Deborah K. Hardy.
Thomas & Dunahoe, G. F. Thomas, Jr., Natchitoches, Bolen & Erwin, James A. Bolen, Alexandria, Whitehead & McCoy, Charles R. Whitehead, Jr., Natchitoches, Brittain, & Williams, Jack O. Brittain, Natchitoches, for defendants-appellees.
*983 Before CUTRER, STOKER and BIENVENU,[*] JJ.
STOKER, Judge.
The several matters discussed in this opinion grow out of an intersectional collision between two automobiles. On June 18, 1979, vehicles driven by James D. Campbell and Teresa McFerrin Parish collided at the intersection of Louisiana Highway 6 and Louisiana Highway 3110 within the city limits of Natchitoches, Louisiana. Four cases including certain interventions were consolidated for trial and are involved in this appeal. Separate opinions are being rendered this date in the three other actions.[1]
The accident occurred because of the malfunctioning (or misalignment) of one or perhaps two signal lights at the intersection. The defendants in the case brought by Deborah Kaye Hardy include the two drivers, the State of Louisiana through the Department of Transportation and Development (State)[2] and the City of Natchitoches (City). Other defendants include Hartford Accident and Indemnity Company (Hartford), insurer of the City of Natchitoches; Natchitoches Motor Company, Ltd., employer of James D. Campbell; Liberty Mutual Insurance Company (Liberty Mutual), insurer of Natchitoches Motor Company, Ltd., and Southern Farm Bureau Casualty Insurance Company (Southern Farm), insurer of Teresa M. Parish.
Various incidental demands were made between the parties.
As the only defendant found liable and cast in judgment the State through the Department of Transportation and Development appeals from that holding and also from the finding of the trial court which absolved the City of Natchitoches from liability and which failed to find that James D. Campbell was guilty of negligence which was either the sole cause of the accident or a contributory cause of the accident. The State also complains of the refusal by the trial court to allow Dr. Ted Norton to testify as an expert. The State has not complained of the quantum of the awards made to the various claimants in the several cases. The City of Natchitoches and Hartford complain that the awards in the death and personal injury cases are excessive.
Deborah Kaye Hardy, plaintiff, appealed individually and for her minor children, but only as to the failure of the trial court to hold the City of Natchitoches and Hartford liable in solido with the State. All other appellants have taken this same position. We reverse as to the trial court's finding and judgment concerning the City of Natchitoches and its insurer, Hartford.

ISSUES
The principal issues on appeal are whether the State, the City or the two drivers, or any of the parties, were guilty of negligence which was a legal cause of the accident. Other issues include the applicability to the State of strict liability under LSA-C.C. art. 2317 and the effect of a contract *984 between the State and City for maintenance of the highways, including the semaphore signal lights at the intersection.
At the intersection Louisiana Highway 6 runs generally east and west and Louisiana Highway 3110 (actually the Natchitoches bypass for Louisiana Highway 1) runs generally north and south. Although the intersection is within the city limits of Natchitoches, it is on the outskirts of the city. Both highways are major highways. A string of overhead hanging signal lights controls traffic at the intersection. Louisiana Highway 6 is split by a median with two lanes on either side. Highway 3110 is quite wide. It is conceded that at least one of the signal lights was turned from its normal direction resulting in a section of the light which normally faced east being turned to face the southbound traffic traveling on Louisiana Highway 3110.
Involved in the collision was a 1979 Ford automobile owned by Natchitoches Motor Company, Ltd., and driven by James D. Campbell. The vehicle was proceeding south on highway 3110 approaching the intersection. Aubrey M. Hardy was a guest passenger in this vehicle. At the same time, a 1978 Ford station wagon driven by Teresa McFerrin Parish was proceeding east on Highway 6, approaching the intersection. The two vehicles entered the intersection and collided. As a result of the accident, Aubrey M. Hardy was killed and James D. Campbell and Teresa M. Parish sustained injuries.
Liberty Mutual provided the general liability and workmen's compensation coverage to Natchitoches Motor Company, Ltd., at the time of the accident. Hartford provided general liability coverage to the City of Natchitoches. Southern Farm provided the automobile liability and physical damage coverage to the Parish vehicle. American Road Insurance Company provided the physical damage coverage on the Natchitoches Motor Company, Ltd., vehicle. The latter and American Road Insurance Company intervened to recover the loss sustained as a result of damages to the automobile driven by Campbell.
A number of suits, interventions and third party demands were filed by and against the several parties. The State and the City filed third party demands against one another, each contending responsibility lay with the other based on a maintenance agreement, as well as legal duty, with regard to the traffic lights in the City, including the lights at the bypass intersection. James D. Campbell and Teresa M. Parish were made defendants by various claimants based on alleged negligent operation of the vehicles driven by each.[3]
Following trial on the merits the State was held solely responsible for the accident and resulting damages sustained by the various claimants because of its failure to timely correct the traffic light condition. The City of Natchitoches, James D. Campbell and Teresa M. Parish were absolved of negligence.
Damages awarded included those to the widow and two children of Aubrey M. Hardy for wrongful death; personal injuries to Mrs. Parish; and automobile damages to the owners and collision insurers of the two vehicles. Since it was found that Hardy and Campbell were in the course and scope of their employment with Natchitoches Motor Company, Ltd., at the time, Liberty Mutual, its workmen's compensation insurer was awarded certain compensation benefits paid to Campbell and the Hardy survivors.
The court left open the damages relating to the injuries of Mr. Campbell who, at the time of trial, was scheduled to undergo physical therapy treatment in an out-of-state hospital for several weeks.
The State sets forth several specifications of error in its brief which we will address in appropriate order. The quantum of the awards has not been complained of by any parties with the exception of the City of Natchitoches and its insurer.

*985 CAUSE-IN-FACT OF THE ACCIDENT
Specification of error number one of the State reads:
"The court erred in concluding there was a preponderance of evidence establishing that a faulty traffic light was the cause-in-fact of the accident."
Of the two parties traveling south Aubrey M. Hardy was killed and James D. Campbell's condition apparently will not permit him to testify. The eastbound party, Teresa Parish, could only state that she had a green light for her lane of eastbound traffic. Lisa McFerrin, sister of Teresa Parish, was following immediately behind Teresa Parish in a separate vehicle. Lisa McFerrin testified that the signal light for traffic in the eastbound lane was green. Given the circumstances the State urges that the plaintiffs have not shown that the signal light problem was the cause-in-fact of the accident. At least one light had been defective for two days prior to the accident. It had been reported numerous times, in some cases by City and State employees. At the time of the accident a State unit was on the way from Alexandria to repair the light. The circumstantial evidence is abundant to support a finding that at least one defective light was so turned as to give both drivers a green light.
As indicated the evidence is not clear that only one light was defective. Tony Mafouz, an employee of the City of Natchitoches, undertook to repair a defect in a signal light at the intersection at 5:00 PM on Sunday, June 17, 1979, which was the day before the accident. His testimony is to the effect that he performed corrective work but it is not at all clear that he worked on one light only, nor is it clear which light or lights he worked on.
Further explanation is appropriate. Louisiana Highway 6 running east and west is separated by a wide median in the vicinity of the intersection. Louisiana Highway 3110 is not separated by a median. The separated portions of Louisiana Highway 6 are one-way with the southernmost part carrying eastbound traffic (the direction the Parish vehicle was traveling) and the northernmost carrying westbound traffic. Some seven traffic signal lights control traffic at the intersection which in effect is a double intersection. See Exhibit Campbell 6-C. The double intersection results because of the wide separation made by the median which causes two distinct crossings of Louisiana Highway 6 by Louisiana Highway 3110. Three signal lights are located at the northernmost intersection and four at the southernmost intersection.
As disclosed by the pictures in evidence there are no four-way signals at any part of the intersection or intersections. Some are one-way signals and some are two-way signals. At the northernmost crossing (where westbound traffic crosses Louisiana Highway 3110) a vehicle traveling south on Louisiana Highway 3110, as the Campbell vehicle was traveling, is confronted with three signals. A one-way signal light on the left faces east and controls westbound traffic on Louisiana Highway 6. In the center a two-way signal (with red, amber and green lights) faces east and north to control west and southbound traffic. A third two-way signal faced by southbound traffic is located to the right. It faces north and has a fourth light below the customary red, amber and green lights. This fourth light controls traffic turning right (west).
Under the arrangement described above a southbound driver such as James D. Campbell would be faced with two two-way signals with lights facing in the driver's direction. Mr. Mafouz found that at least one of the two two-way signals was twisted on its axis and he performed a temporary repair which caused it to face properly. Nevertheless, the testimony establishes that at least from the time Mr. Mafouz performed his work until after the accident when the State made repairs the two two-way signals at the two separate intersections were registering the same colors at the same time. The testimony developed the fact that there were numerous near accidents before the occurrence of the tragic accident with which we are involved in this case.
*986 We find that it was more probable than not that at the time of the accident James D. Campbell was confronted with green lights only and further that Teresa Parish, who was traveling east was also confronted with green lights. Under these circumstances we consider that the signal light problem was the cause-in-fact of the accident. McDaniel v. Welsh, 234 So.2d 833 (La.App. 1st Cir. 1970), writ refused, 256 So.2d 616, 237 So.2d 397 (La.1970). Cf. Garrison v. State of Louisiana through the Department of Highways, 401 So.2d 528 (La. App. 2nd Cir. 1981).

LIABILITY OF THE STATE (DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT)
The negligence of the State is manifestly clear. It had adequate notice of the problem at the intersection. A State employee, Wilbur Welsh, noticed the malfunctioning of the signal light as early as 6:30 AM on Saturday, June 16, 1979. He reported the condition to the State's maintenance barn which is about 500 yards from the intersection. It appears that it was necessary to send a repairman from Alexandria, some fifty-odd miles away. This was done on Monday morning, but the repairs did not occur until after the accident.[4] If the local maintenance crew did not include a technician capable of making the necessary repairs, the State had the duty to put up appropriate warning devices and put a flagman on duty temporarily until the situation was corrected. The State also had a duty to notify local police authorities so that traffic could be directed manually until repairs could be made. Gaspard v. Stutes, 380 So.2d 201 (La.App. 3rd Cir. 1980) and Doise v. Richard, 311 So.2d 286 (La.App. 1st Cir. 1975).
Aside from the liability based on negligence the State is liable under LSA-C.C. art. 2317. Jones v. City of Baton Rouge, 388 So.2d 737 (La.1980); Shipp v. City of Alexandria, 395 So.2d 727 (La.1981) and Garrison v. State of Louisiana, through the Department of Highways, supra. The intersection in question involved two State highways. Custody of the signal lights was in the State and no contract with the City of Natchitoches could relieve the State of control and custody as contemplated by LSA-C.C. art. 2317. In negligence cases a contract between the State and a municipality cannot relieve the State of its fundamental responsibility for maintenance work on State highways located within corporate limits of municipalities. Robertson v. Handy, 354 So.2d 626 (La.App. 1st Cir. 1977), writ denied, 356 So.2d 434 (La.1978).

LIABILITY OF THE CITY OF NATCHITOCHES
Other than making a finding that the City of Natchitoches as a defendant was not negligent, the trial court's reasons for judgment do not discuss the role of the City of Natchitoches. We disagree with the trial court's finding that there was no negligence on the part of the City and reverse that portion of the judgment.
Although the State had and retained basic responsibility for the signal lights an extremely dangerous situation existed for the traveling public within the city limits. Irrespective of whose responsibility it was to make repairs of the signal light or lights, the City of Natchitoches at least had a duty to see that the drivers of vehicles on the two highways were warned of the danger until it could be corrected. Gaspard v. Stutes, supra. The City seeks to excuse itself on the grounds that its police force was completely absorbed in other duties of an emergency nature. This excuse cannot exonerate the City from the responsibility for its negligent failure to make provision for warnings.
Both highways at the intersection are beyond the principal built up area of Natchitoches *987 and the situation is more in the nature of highways in open country side. The speed limit on both highways is 55 miles per hour. Under the circumstances the possibility and probability of serious accident through intersectional collision was so great that the dangerous condition should have had a very high priority for attention by the police department. Moreover, the City certainly must have had other personnel who could have been sent to control and warn traffic. Public works or street maintenance employees should certainly have been capable of acting as emergency traffic controllers and could have put up warning notices. In addition, the City might have sought assistance from the State Police or the Parish Sheriff's office. The City contented itself with making calls to the State to repair the signals. The call to the Alexandria office of the State was apparently not made until Monday morning, with the result that the repair crew of the State did not arrive until after the accident.
The City should have provided some type of warning. Gaspard v. Stutes, supra. Cf. Travelers Insurance Company v. Ragan, 202 So.2d 302 (La.App. 1st Cir. 1967); Carlisle v. Parish of East Baton Rouge, 114 So.2d 62 (La.App. 1st Cir. 1959); LeJeune v. State Farm Mutual Automobile Insurance Company, 107 So.2d 509 (La.App. 1st Cir. 1958); and Hodges v. State, Department of Highways, 370 So.2d 1274 (La.App. 3rd Cir. 1979), writ denied, 374 So.2d 660, 661 (La. 1979).
Aside from the question of negligent failure to warn, the City undertook to repair the signal or signals and negligently did so. In McDaniel v. Welsh, supra, it was held that a political subdivision which assumed the task of correcting a malfunctioning signal was negligent in not doing so properly. Evidently Mr. Mafouz's efforts on the day before the accident resulted in an inadequate inspection and failure to locate all the trouble or a failure to properly remedy the misalignment or both. Such failure was a cause-in-fact of the accident. McDaniel v. Welsh, supra.
For the reasons stated the City of Natchitoches is liable in solido with the State to plaintiffs.

LIABILITY OF THE DRIVERS
The trial court correctly found neither of the drivers to have been negligent in the operation of their vehicles. Teresa M. Parish and her sister Lisa McFerrin, who was following immediately behind her, testified that the signal was showing a green light for traffic on Louisiana Highway 6. This testimony is uncontradicted.
We have already dealt with the situation which faced James D. Campbell. While he is unable to testify we have concluded that under the evidence he was faced with one if not two green signal lights. In defense of this suit it is suggested that James D. Campbell should have been faced with one red light at least. It is urged that of two lights facing him, if a malfunctioning light showed green, the other would nevertheless have been red. We do not believe this was the case. However, in Gaspard v. Stutes, supra, one of the drivers, Stutes, was faced with a red light and a green light because one particular light was misaligned. This court affirmed the trial court's finding that both drivers were free of negligence in entering the intersection. Assuming that the contentions of the defense that there was at least one red light facing Campbell are correct, we nevertheless find under such circumstances that Campbell was not negligent.
This holding answers any charge of contributory negligence leveled at Campbell or his guest passenger, Hardy.[5]

*988 THIRD PARTY DEMAND OF THE STATE AND CITY AGAINST ONE ANOTHER
The State and the City have each impleaded the other seeking indemnity from the other in the event of their being found liable to plaintiffs. The basis for the indemnity claims is a contract for maintenance of streets and signal lights within the City of Natchitoches which are within the State system of highways. This maintenance contract was entered into pursuant to the authority contained in LSA-R.S. 48:193 and 261. The contract was in effect at the time of the accident. While the State may not contract away its basic responsibility, it may contract with a municipality such as the City to perform certain maintenance and repair functions on State highways within a municipal area. LSA-R.S. 48:193(A) and (D) and LSA-R.S. 48:261.
As one of the maintenance obligations assumed by the City, as contained in Article IV of the agreement, it agreed to "maintain and operate traffic signals." The State retained responsibility for certain functions. Article IX is a mutual hold harmless agreement in which the City is referred to as the "Municipality" and the State as "Office". The provision reads:
"ARTICLE IX. It is understood and agreed that the Municipality shall hold Office harmless for any and all claims for damages to person or property arising by reason of any negligence attributed to failure of proper maintenance of any of the facilities assumed by said Municipality and likewise Office shall hold said Municipality harmless of any and all such claims arising by reason of its undertakings herein."
The position of the City is that under the contract it is not responsible for "major" repair or "significant" maintenance of traffic signal lights affected by the contract. The lights at the intersection of Louisiana Highway 6 and Louisiana Highway 3110 are included in the contract. As we read the contract the words "maintain and operate traffic signals" appear to be all embracing. Article VII of the contract provides:
"It is further understood that the signal lights listed in this agreement shall be acceptable to the Office for the purpose of execution of this agreement. However, under the authority granted the Office under La.R.S. 48:193 the Office shall exercise full control over the replacement of these signal lights when such replacement becomes necessary."
Irrespective of how the contract might be interpreted standing alone, we think the obligation of the parties was materially altered by a general directive of the State published on January 1, 1977, over the signature of W. T. Taylor, Jr., Assistant Secretary of the Department of Transportation and Development. See Natchitoches Exhibit # 2 at Tr. 48. The directive applies generally to such agreements as the one in question between the State and the City. It bears the significant subject title: "Official Interpretation of Maintenance Agreements Between the Department and Municipalities Regarding Traffic Signals" and bears the designation PPM No. 19. We reproduce the directive in full as an appendix to accompany this opinion.
A copy of directive PPM No. 19 dated January 1, 1977, was forwarded to Mayor Joe Sampite on October 19, 1980, by the Department of Transportation and Development in response to a request by letter from Mayor Sampite asking for a clarification of the responsibilities of the City regarding traffic light maintenance under Article IV of the agreement concerning the meaning of the words "maintain and operate traffic signals." In the letter the Department stated that since directive PPM No. 19 governed the responsibility of the City there was no need to rework the contract *989 as had been suggested by Mayor Sampite.[6]
Giving effect to the State's interpretation of the contract in effect on the date of the accident involved here as shown by the Department's letter of October 12, 1980, there is no basis for a claim of indemnity against the City by the State. We see no need for interpretation by us in view of the interpretation placed on the contract by the Department itself.
We see no basis for an indemnity claim by the City against the State. The statutory law of this State places the responsibility for signal light maintenance and repair on the State. Contracts with political subdivisions of the type involved here authorized by statute merely permit the State to contract for some of its duties to be performed by political subdivisions and for payment of compensation to the subdivisions which perform the work. Hence, the third party demands of the State and the City will be denied.
We should note that the contract just discussed has no bearing on the liability of the State and the City to the plaintiffs in the various cases before the court arising out of the accident in question. Both the State and City are guilty of acts of negligence which were causes-in-fact of the accident and the State is liable without fault under LSA-C.C. art. 2317. Hence, these defendants are solidarily liable to the plaintiff.

CITY'S DEFENSE OF INABILITY TO PAY
The City filed an amended petition asserting that it is destitute and unable to pay a judgment in favor of plaintiff Deborah Kaye Hardy and her children. Tr. 220. It is admitted that the City is insured by Hartford. Assuming that this defense is available to a political entity and was proven, the City cannot avail itself of the defense under the circumstances of this case. In Daniels v. Conn, 382 So.2d 945 (La. 1980) the Louisiana Supreme Court held:
"... where there are solvent and insolvent joint tortfeasors liable in solido, evidence of the insolvent defendant's inability to pay may not be considered by the trial judge in determining damages to be awarded to the plaintiff, or in apportioning damages as between those joint tortfeasor defendants at the trial on the merits of plaintiff's claim."
The City has not shown the State to be insolvent and we presume it to be solvent.

FAILURE TO ALLOW THE STATE'S EXPERT WITNESS TO TESTIFY
The State lists as one of its specifications of error the refusal of the trial court to permit Dr. Ned Walton to testify as expert on behalf of the State or to permit a proffer of his testimony. The State contends it was prejudiced by this action of the trial court. Dr. Walton testified he held a Phd degree which he described as a combined degree in highway design, traffic engineering and human factors engineering. The State established that Dr. Walton had *990 impressive qualifications and tendered him as an expert in the "field of traffic engineering, which includes traffic control devices." Tr. 734. Opposing counsel traversed Dr. Walton and questioned him with regard to what his expertise in visibility consisted of. His expertise in that area was objected to and the trial court ruled that Dr. Walton was not qualified and competent to testify as an expert. Tr. 737.
It was never clear that Dr. Walton was being offered as an expert to testify concerning questions of mechanics of signal devices or highway engineering. As to expertise in visibility Dr. Walton testified as follows on cross examination:
"Q. What is an expert in visibility, Dr. Walton?
A. Let me contrast it for you with vision which is medical physiological phenomena. Vision is how we see. Visibility is the study of relationships between people characteristics, their vision characteristics, and the detection conspicuity, the ability to see objects, things, people, features. If we're talking about visibility in the strictest sense on a transportation facility, we're talking about visibility of roadway features, traffic control devices, pedestrians, signs, signals, markings, from a human factors point of view.
Q. Did you take courses in visibility?
A. Oh, yes. I've taught courses in visibility as well.
* * * * * *
Q. What are courses in human factors?
A. What are courses in human factors? Human factors engineering, I'll contrast that to pure human factors, which is psychology. Pure human factors is psychology. Human factors engineering is the application not only of psychological phenomena but physiological capabilities as well. So, human factors, we're talking about human capabilities, abilities and limitations within some system. And usually when you're talking about human factors engineering, you're talking about a man-machine system interfacing and put together, highways in particular, a driver-vehicle, a roadway, roadway environment."
In attempting to relate the expertise in visibility described by Dr. Walton to the issues of this case, we are unable to conceive of how he might have assisted the court. We consider the question, not so much as to the qualifications of Dr. Walton in the field he described, but rather whether there were any factual issues which might have been more easily resolved had he been allowed to testify. The scene of the accident was familiar to the court and pictures introduced in evidence adequately depict the scene. We do not find any issues raised as to the design of the highway intersection or its signal control system. The evidence established the misalignment of at least one signal light. Hence, Dr. Walton's testimony could not have been relevant to any of these matters. As to what a person might see, parties at the scene before and after the accident gave testimony as to what they saw. Under the circumstances we see no prejudice to the State in the court's refusal to allow Dr. Walton to testify. We make no ruling as to the trial court's refusal to allow a proffer of the testimony.

QUANTUM
In a supplemental brief the City and Hartford urge alternatively, in the event they be held liable to plaintiffs, that "the amounts awarded ... Mrs. Hardy and the two children were grossly excessive and constitute abuse of discretion accorded the trial judge." No suggestion is made as to what awards would be within the trial court's discretion.
The trial court awarded general damages of $100,000.00 to Deborah Kaye Hardy and $40,000.00 to each of the minor Hardy children. The sum of $2,000.00 was awarded to Mrs. Hardy and her children in the survival action to cover Aubrey M. Hardy's personal injuries and pain and suffering prior to his *991 expiration. Special damages awarded consisted of $760,000.00 in loss of earnings, $2,133.26 in funeral expenses and $136.20 in medical expenses.
We do not find that the trial court abused its discretion in making these awards.
At the time of his death Aubrey M. Hardy was approximately 26½ years old. He and Deborah Kaye Hardy had been married since August of 1972. They had two children. At the time of the accident, Brian was 2 months old and Christopher was 2½ years old. Aubrey M. Hardy was employed by Natchitoches Motor Company, Ltd., as a salesman and was also self-employed as a locksmith. In addition, he dealt in independent vehicle sales for profit.
Testimony by close relatives and friends indicate that Aubrey M. and Deborah Kaye Hardy and their children enjoyed a very close family relationship and that Aubrey M. Hardy's death was a significant personal loss to them. The unexpected death of her husband came as quite a shock to Deborah Kaye Hardy. It has been somewhat difficult for Christopher to adjust to his father's death, a loss which he has difficulty in understanding. Aubrey M. and Deborah Kaye Hardy not only enjoyed a fine home life together with their children but also enjoyed social activities together.
The attending physician who saw Aubrey M. Hardy testified that when he saw him in the emergency room Aubrey M. Hardy told him that he could not breathe. Aubrey M. Hardy had a torn vessel in his chest and was bleeding rapidly. He soon lost consciousness. His injury was a crushing injury to the chest which resulted in massive internal bleeding. The award of $2,000.00 for pain and suffering experienced by Aubrey M. Hardy prior to his death does not appear to be excessive.
Aubrey M. Hardy died at approximately 9:30 AM on the day of the accident.
Dr. David Townsend, professor of economics and finance and Dean of the college of business at Northwestern State University testified as an expert concerning probable future earnings of Aubrey M. Hardy. He estimated that Aubrey M. Hardy had a work life expectancy of 38 years. Based upon earnings as an automobile salesman and locksmith, Dr. Townsend estimated a future loss of earnings in the amount of $750,000.00. Dr. Townsend estimated that Hardy would earn approximately $10,000.00 a year from each of the two endeavors. Based on the evidence in the record we cannot find that the trial court abused its discretion in making the awards discussed above. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Reck v. Stevens, 373 So.2d 498 (La.1979).

CONCLUSION
For the foregoing reasons as respects appellee Deborah Kaye Hardy individually and on behalf of her minor children, the judgment of the trial court is affirmed in all respects except as to its holding relative to the City of Natchitoches and Hartford Accident and Indemnity Company. As to them the judgment of the trial court is reversed. They are now cast in judgment in solido with the State of Louisiana, Department of Transportation and Development and the trial court judgment is amended accordingly.
As intervenors American Road Insurance Company and Natchitoches Motor Company, Ltd., recovered the sums of $4,465.83 and $100.00 representing the total subrogated and deductible damages to the automobile driven by James D. Campbell. Tr. 925. Judgment was granted against the State alone. The intervention made the City of Natchitoches and Hartford Accident and Indemnity Company, defendants, and the intervenors appealed from the dismissal of their intervention against these two defendants. As to the City of Natchitoches and Hartford Accident and Indemnity Company as defendants-appellees in this intervention, we reverse to cast them in solido with the State in conformity with the disposition *992 made above in the principal case of Deborah Kaye Hardy.[7]
REVERSED IN PART AND AMENDED: AFFIRMED AS AMENDED.
 APPENDIX
 LOUISIANA DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT PPM NO. 19
 OFFICE OF HIGHWAYS
 ASSISTANT SECRETARY'S POLICY AND PROCEDURE MANUAL
 DATE January 1, 1977
 SUBJECT Official Interpretation of Maintenance Agreements Between
 the Department and Municipalities Regarding Traffic Signals
Louisiana R.S. 48:193 permitted the Department of Transportation and Development, Office of Highways, to enter into maintenance agreements with municipalities for certain phases of maintenance on State maintained highways through the municipality. These maintenance agreements state, in part, that the municipality shall maintain and operate traffic signals.
The implementation of these agreements pertaining to traffic signals as it applies to all municipalities except those with full maintenance agreements, namely Baton Rouge, Shreveport and New Orleans, will be as follows:
1. The municipality shall pay the power bill for operation of the signal; and
2. The municipality shall replace inoperative light bulbs and burned-out fuses as their responsibility for routine maintenance.
3. In cities where efficient personnel are retained by the City to perform signal maintenance of a more complicated nature, the Office of Highways shall continue to welcome such additional maintenance as is done by these forces.
4. In cases where the municipality cannot, or refuses to pay power bill, relamp or replace burned-out fuses, the Office of Highways should terminate this portion of the contract, assume full maintenance of the signals and pay power charges.
5. In the event that a signal is knocked down and/or demolished, and Office of Highways forces are not immediately available to make repairs or reinstallations, if the City desires to do so, they may reinstall the signal with their own forces.
Upon proper evaluation of such an installation, the Office of Highways shall (1) remove and return the existing equipment to the City and replace it with equipment, or (2) if the installation is satisfactory to the Office of Highways and agreeable with the City, the Office of Highways shall replace in kind from stock the equipment used by the City for the installation.
6. In replacing any equipment or in installing new signals in any municipality, consideration should be given to the municipality's preference for a certain brand of equipment, provided other signals in the municipality are of that brand and provided this type is available from DOTD stocks.
This memorandum supersedes Louisiana Department of Highways Director's Policy and Procedure Memorandum 64. All other directives, memoranda or instructions issued heretofore in conflict with this memorandum are hereby rescinded.
This policy will become effective on January 1, 1977.
 /s/ W. T. Taylor
 W. T. TAYLOR, JR.
 ASSISTANT SECRETARY

*993 ON APPLICATION FOR REHEARING
PER CURIAM.
In this and the companion cases consolidated with it, the State of Louisiana, Department of Transportation and Development, the City of Natchitoches and Hartford Accident & Indemnity Company have applied for a rehearing. The applications for rehearing are denied. Hartford has called our attention in the application on its behalf to the fact that its policy of insurance contains limits of liability for bodily injury, which includes death, of $200,000. In our judgment on original hearing we cast Hartford in solido with the City of Natchitoches and with the State. Hartford's policy in evidence does in fact indicate a limitation for bodily injury including death of $200,000 for each occurrence. Hartford's liability, of course, cannot exceed its limits. The policy also indicates a limitation of $50,000 for property damages for each occurrence and an aggregate of $100,000. In view of the policy limits we amend the judgment to provide that Hartford shall not be liable for more than its limits.
As pointed out in our opinion on original hearing, we do not have before us the claim of James D. Campbell because no judgment had been rendered in this case when the several appeals in this and the other cases were heard and acted upon. Therefore, our amendment as to Hartford relating to bodily injury coverage applies to the death claim of Deborah Kaye Hardy, et al. (Number 8276), the personal injury claim of Teresa McFerrin Parish (Number 8279), Parish v. Liberty Mutual Ins. Co., 404 So.2d 996 (La.App.), and the claim for reimbursement of workmen's compensation filed by Liberty Mutual Insurance Company (Number 8277 Liberty Mutual Ins. Co. v. State, through Department of Transportation and Development, 404 So.2d 994 (La. App.) and as asserted through intervention in this, the Hardy suit). Any damages for property damages are payable out of the property damage coverage rather than the $200,000 in bodily injury coverage. These limits shall be apportioned between the claimants before this court as provided by law including the claim on behalf of James D. Campbell.
The City of Natchitoches has complained in its application for rehearing that our decision on original hearing did not follow (or distinguish) the decision of our brothers of the Second Circuit in Garrison v. State of Louisiana, Through the Department of Highways, cited supra, in our opinion in the original hearing in connection with certain issues. The facts of the Garrison case and the facts of the case before us are distinguishable relative to issues not connected with ownership of the signal lights or the obligation to maintain them. This is manifest from a reading of the two opinions. Nevertheless, as the point has been raised on rehearing, we will point out the distinction.
In the Garrison case the City of Monroe was exonerated and was found not to be negligent. We found the City of Natchitoches had no responsibility for the condition of the defective lights. The Second Circuit arrived at a similar conclusion but on different grounds. However, we found the City of Natchitoches to have been negligent in two respects. It was negligent for failure to safeguard the intersection after notice of the dangerous situation caused by the malfunctioning light or lights. This same point was considered in the Garrison case in which the Court of Appeal for the Second Circuit noted that after notification to the City of Monroe an officer was immediately sent to the location but apparently did not arrive before the accident. Therefore, the Second Circuit held that the City of Monroe was not negligent in failing to safeguard the intersection. These facts are clearly distinguishable from the facts involving the inaction of the City of Natchitoches which had notice over a considerable period of time. The second respect in which we held the City of Natchitoches to have been negligent was in connection with *994 the attempt of is employee to repair the light or lights on the day previous to the accident. There was no such undertaking in the Garrison case. We consider the facts of the two cases to be clearly distinguishable.
Both applicants for rehearing urge that this court erred in not making a ruling on the trial court's refusal to allow the State to make a proffer of the expert testimony of Dr. Ned Walton. While we think the trial court was in error in refusing to allow the proffer, LSA-C.C.P. art. 1636, we indicated on original hearing that the expert opinion disallowed by the trial court would not alter the result of our finding. Under the circumstances there is no need to discuss the issue.
APPLICATIONS FOR REHEARING DENIED.
NOTES
[*] Judge C. Thomas Bienvenu, Jr., Sixteenth Judicial District Court, Parish of St. Martin, participated as Judge Ad Hoc in this decision.
[1] The other three actions are: Liberty Mutual Insurance Co. v. State of Louisiana, Through Department of Highways, et al, 404 So.2d 994 (La.App. 3rd Cir. 1981) our docket number 8277; Southern Farm Bureau Casualty Insurance Company v. Liberty Mutual Insurance Co., et al, 404 So.2d 995 (La.App. 3rd Cir. 1981) our docket number 8278; and Parish v. Liberty Mutual Insurance Co., et al, 404 So.2d 996 (La.App. 3rd Cir. 1981) our docket number 8279.

The claim of James D. Campbell is not before us. His cause of action was asserted through intervention in this suit of Deborah Kaye Hardy. Tr. 51, 77, 105, 107 and 190. The intervention on his behalf, in which he is represented by Shirley Campbell, provisional curator, was left open. Tr. 869 and 919. Although an appeal was entered on behalf of James D. Campbell (Tr. 5A, Supplemental Record on Appeal dated June 3, 1981), insofar as we can determine from the record no judgment on behalf of James D. Campbell has been rendered.
[2] The caption lists the Department of Highways in both the petition and in this appeal. The petition referred to the "State of Louisiana, Department of Transportation" and the State answered as "the State of Louisiana, Department of Transportation and Development."
[3] By stipulation at the beginning of the trial the claims of various plaintiffs based on the alleged negligence of James D. Campbell and Teresa M. Parish were dismissed. As a result the trial proceeded against the State, the City of Natchitoches and its insurer as the sole defendants. Tr. 323-324.
[4] The State repairman who arrived after the accident and repaired the signals raised one of the signals controlling southbound traffic. He found this signal was 14 feet three inches above the highway and raised it to 16 feet above the highway, its normal distance from the highway. Apparently the signal had been struck by a passing vehicle.
[5] While we do not have the claim of James D. Campbell before us in this appeal (see footnote 1, supra), his alleged contributory negligence was made an issue in the claim of Deborah Kaye Hardy. See the defense asserted by the City of Natchitoches in its First Supplemental Answer adding paragraph 35 (Tr. 114) wherein the City urged that Aubrey M. Hardy was on a joint mission with Campbell, his host driver, and that all acts of negligence of Campbell were imputed to Hardy barring claims by him. A survival action was asserted on behalf of Mrs. Hardy and her children for the pain, suffering and injuries suffered by Aubrey M. Hardy prior to his death.
[6] The Department's letter on its letterhead stationery reads as follows:
 "October 16, 1980
MAINTENANCE AGREEMENT
CITY OF NATCHITOCHES
 Honorable Joe Sampite
 MayorCity of Natchitoches
 P. O. Box 37
 Natchitoches, LA 71457
 Dear Mayor Sampite:

Reference is made to your letter of October 14, 1980 concerning clarification of the responsibilities of the City regarding traffic light maintenance under Article IV of the original agreement "maintain and operate traffic signals."
The responsibility for the City is detailed in the attached copy of PPM No. 19 from the Department's Assistant Secretary's Policy and Procedure Manual.
I hope this will clarify any questions you have and resolve the need for reworking the current maintenance agreement. Should any additional information or action be required, please advise.
 Very truly yours,
 GORMAN S. POUNDERS
 CHIEF MAINT. & OPERS.
 ENGINEER
 s/ L. N. Hunsinger, Jr.
 L. N. HUNSINGER, JR.
 ROAD MAINT. ENGINEER"

[7] With respect to the intervention of Liberty Mutual Insurance Company we dispose of that case in a separate opinion rendered in the companion suit of that insurer, our docket number 8277.