503 So.2d 618 (1987)
Gwendolyn GUILLOTTE and Katherine M. Cain
v.
The DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT.
No. CA 5590.
Court of Appeal of Louisiana, Fourth Circuit.
February 12, 1987.
*619 Norman Sisson, William Irwin, Sharon F. Lyles, Gregory J. Lannes, Jr., Chalmette, for appellant.
Cornelius E. Regan of Grant & Barrow, A Professional Law Corp., Gretna, for appellee.
John E. McAuliffe, Jr., New Orleans, for intervenor.
Before GULOTTA, CIACCIO and LOBRANO, JJ.
CIACCIO, Judge.
This suit arises from a one-car accident on October 3, 1981, at the "Magnolia Curve" on Louisiana Highway 23 in Plaquemines Parish. Plaintiff originally sued the State through the Department of Transportation and Development, Office of Highways. The DOTD third-partied the Parish of Plaquemines. By amended petition plaintiff added the Parish as a defendant. Plaintiff's insurer, Safeco Insurance Company of America, intervened to recover for damages sustained by plaintiff's vehicle.
Following trial the court rendered judgment as follows:
(1) In favor of plaintiff and against DOTD for $130,421.37, "with the plaintiff being found 30% comparatively negligent";
(2) In favor of Safeco and against DOTD for $4,506.66, "subject to a reduction of 30% as the result of the comparative negligence of its insured";
(3) In favor of the Parish and against plaintiff, dismissing plaintiff's claim; and
(4) In favor of the Parish and against DOTD, dismissing the third-party demand. *620 Plaintiff has not appealed. Therefore, that portion of the judgment in favor of the Parish and against plaintiff, dismissing plaintiff's claim, is now final. The DOTD has appealed, focusing mainly on the dismissal of its third-party demand against the Parish. As to the judgment against it and in favor of the plaintiff, DOTD complains that the amount of the award is excessive.
Not raised by the parties as issues on appeal are the cause of the accident and the finding that plaintiff was 30% comparatively negligent. We will consider these conclusions by the trial court as correct in resolving the issues which have been raised on appeal. Generally the issues raised are whether the DOTD should have prevailed on its third-party demand against the Parish, and whether the amount awarded plaintiff as compensation for her damages is excessive. In this context DOTD does argue that the Parish, and not the State, is liable for plaintiff's damages.
We hold that the State and the Parish are equally responsible for the condition which caused the accident, and that the State is not entitled to indemnification from the Parish, but that the State is entitled to contribution from the Parish as a co-tortfeasor. Also we hold that plaintiff's award is not excessive.

The Cause of the Accident
At about 9:30 p.m. on October 3, 1981, plaintiff was driving her automobile southbound on La. Hwy. 23 approaching a section called the "Magnolia Curve." The "Magnolia Curve" is not one curve, but rather a series of three curves in the highway. The accident occurred in the second of these three curves.
Plaintiff's car entered the second curve travelling an estimated 40 to 45 m.p.h. The posted speed limit was 55 m.p.h. She drove the right front tire of her automobile off of the pavement and onto the shoulder of shells. She felt the tire drop off of the pavement and heard the sound from her driving on the shells. She was not immediately concerned, and attempted to steer back onto the highway. She discovered, however, that she could not easily regain the pavement; the tire felt as if it was caught in a rut or a groove. Plaintiff oversteered, the tire came back onto the pavement, and the car shot across the highway, through a ditch, flipped over at least once and came to rest upside down against a telephone pole. There is no indication that plaintiff made any significant effort to slow down once she found herself subject to this hazardous circumstance.
At the spot where the tire regained the pavement the shoulder was at least three inches below the paved surface of the highway. The edge of the pavement presented on almost vertical face, it was not rounded or tapered into the shells.
This accident was caused by the combined circumstances of plaintiff driving onto the shoulder, the shoulder at the edge of the pavement being depressed at least three inches from the surface level of the highway, the vertical edge of the pavement, and plaintiff's maneuvering to return her tire to the pavement.

Liability for the Accident
The trial court adjudged plaintiff 30% comparatively negligent. As noted above, that finding has not been questioned on appeal, so we consider it to be correct. At issue here is whether the remaining 70% of liability rests with the State, the Parish, neither, or both.
The State has primary responsibility for the maintenance of state highways, including the shoulders. La.R.S. 48:1(11) and (13); La.R.S. 48:21; La.R.S. 48:191; Robertson v. Handy, 354 So.2d 626 (La.App. 1st Cir.1977), writ denied, 356 So.2d 434 (La.1978); Willis v. State ex rel. Louisiana Dept. of Highways, 321 So.2d 819 (La.App. 1st Cir.1975), writ denied, 325 So.2d 280 (La.1976). The State is required to maintain its highways in a reasonably safe condition, it cannot knowingly allow a condition to exist which is hazardous to a reasonably prudent operator of a motor vehicle. The State is also subject to liability without fault under La.C.C. Art. 2317. Hardy v. State, through Department of *621 Highways, 404 So.2d 981 (La.App. 3d Cir. 1981), writ denied, 407 So.2d 741 (La.1981); Garrison v. State, through Department of Highways, 401 So.2d 528 (La.App. 2d Cir. 1981).
It is undisputed on appeal that the condition of the shoulder and the pavement edge at the location of this accident presented a hazard which was a legal cause of this accident. Evidence that both the State and the Parish were aware that the pavement edge of the shoulder in these curves was frequently worn down by passing traffic establishes constructive knowledge of this condition. Further, as the court in Hardy v. State, through Department of Highways, supra, pointed out, even without knowledge the State would be liable under La.C.C. Art. 2317. This liability is not absolute but strict, subject to the defenses of victim fault, fault of a third person, or action by an irresistible force. See Ship v. City of Alexandria, 395 So.2d 727 (La.1981).
No one claims action by an irresistible force. The issue of victim fault is resolved by the finding that plaintiff was 30% comparatively negligent. Cf. Bell v. Jet Wheel Blast, 462 So.2d 166 (La.1985), and Gallagher v. Favrot, 499 So.2d 1205 (La.App. 5th Cir., 1986). DOTD does argue that the Parish is a third-person whose fault will exculpate the State. DOTD's argument focuses upon a highway maintenance contract between the State and the Parish, and the Parish's continued performance of maintenance after the expiration of that contract in 1979.
As to the plaintiff, the State has a non-delegable duty to maintain the highways in a safe condition. That duty cannot be contracted away. Hardy v. State, through Department of Highways, supra; Robertson v. Handy, supra. The Parish was not a stranger third-person whose sole independent fault is not imputable to the State, as in, for example, Duvernay v. State, through Department of Highways, 433 So.2d 254 (La.App. 1st Cir.1983), writ denied 440 So.2d 150 (La.1983). Rather, the Parish was a permissive custodian third-person for whose fault the State is responsible or answerable. See Olsen v. Shell Oil Company, 365 So.2d 1285 (La. 1978); Cf. Dotson v. Matthews, 480 So.2d 860 (La.App. 2d Cir.1985), writ denied, 481 So.2d 1336 (La.1986).
We find that the State is liable to the plaintiff under La.C.C. Art. 2315 for its negligence in not properly maintaining the highway, and is liable under La.C.C. Art. 2317.
Although the Parish initially may not have had a duty to the plaintiff to maintain the highway, that duty belonging primarily to the State, it undertook the responsibility of maintaining the shoulder and, therefore, acquired the duty to maintain the shoulder properly. See Hardy v. State, through Department of Highways, supra, and McDaniel v. Welsh, 234 So.2d 833 (La.App. 1st Cir.1970), writ refused, 256 La. 616, 237 So.2d 397 (1970). Because its negligent failure to properly maintain the shoulder was a legal cause of this accident, the Parish is a co-tortfeasor with the State. This conclusion, however, does not affect the judgment as to the plaintiff because plaintiff did not appeal the dismissal of the Parish. This conclusion, nevertheless, does affect the judgment on the State's third-party demand against the Parish.

DOTD's Third Party Demand Against the Parish
DOTD originally premised its third-party demand on an argument that the Parish was solely responsible for the improperly maintained shoulder. We concluded above that the Parish and the State are co-tortfeasors with respect to the condition of the shoulder. Further, because the State and the Parish had concurrent duties to properly maintain the shoulder, their concurrent failure to properly maintain results in solidary liability. As such, the State is entitled on its third-party demand to contribution from the Parish in proportion to the fault of the Parish. La.C.C. Arts. 1804 and 1805. We find the State and the Parish equally at fault for failing to properly maintain the shoulder. The *622 State is, therefore, entitled to judgment on its third-party demand for contribution from the Parish for one-half of any amounts the State must pay plaintiff under the judgment.
By amending its third-party demand the State also argued its entitlement to contractual indemnification from the Parish. DOTD's argument is based upon the contract mentioned above which once existed between the State and the Parish. Under the terms of that contract the Parish, for renumeration from the State, agreed to maintain the unpaved shoulders of the state highways within the Parish. The Parish also agreed to hold the State harmless, that is to indemnify the State, for any liability incurred by the State as a consequence of any improper maintenance as required of the Parish under the contract. This contract expired in 1979, it was not renewed.
At the time of this accident no written contract existed. DOTD argues that the earlier contract remained in force, despite its expiration under its own terms, because the Parish ratified the contract by continuing to perform the maintenance work called for by the contract. The evidence does not support a finding of ratification. The Parish continued to do the maintenance work, but without renumeration. The Parish also continued to negotiate with the State for different terms for a new contract. The Parish and the State could not agree on terms for a new contract; they did not continue to operate under the terms of the expired contract. Maintenance continued to be performed, but without renumeration. Basic terms of a new contract could not be agreed upon. Rather than indicating consent and compliance, the evidence establishes fundamental failure of consent. We find correct, therefore, the apparent decision of the trial court that no contract existed at the time of the accident. Thus, the State is not entitled to contractual indemnity from the Parish.

Quantum
In awarding damages the trier of fact is vested with much discretion. Only after an articulated analysis of the facts has disclosed an abuse of discretion may an appellate court disturb an award as being either excessive or insufficient. Reck v. Stevens, 373 So.2d 498 (La.1979); Wilson v. Magee, 367 So.2d 314 (La.1979). DOTD argues that the award is excessive compensation for plaintiff's broken ankle.
Plaintiff testified that immediately following the accident she knew that her ankle was broken. She had to be helped from the car; her foot was abnormally twisted to one side; she was in pain. The paramedics who attended her at the accident scene placed her ankle in an inflatable cast and transported her to a nearby hospital.
At the hospital plaintiff's ankle was x-rayed and she was given medication for pain. The emergency room physician determined that plaintiff needed immediate surgery, but suggested that she be transported to another hospital. Plaintiff was transported by ambulance to West Jefferson General Hospital.
Dr. Mark Juneau, an orthopedic surgeon, was contacted, and he met plaintiff at the West Jefferson Hospital emergency room. Plaintiff's ankle was grossly swollen with an open wound exposing a broken talus. With plaintiff under general anesthesia, Dr. Juneau surgically repaired the broken bones using pins to hold the fractured fragments together after they had been realigned.
Following surgery plaintiff's ankle was placed in a splint. After the swelling subsided, her ankle was secured with a cast. She was given morphine for pain, and essentially was confined to bed with her ankle kept elevated. She was not to put any weight on that ankle, using crutches if she had to get out of bed. She was released from the hospital six days after surgery.
Following her discharge on October 9, plaintiff saw Dr. Juneau on October 13, October 28, November 16, and November 30. During this time plaintiff had been instructed to remain inactive, keeping her ankle elevated. On November 30, with *623 plaintiff as an out-patient at the hospital, Dr. Juneau used local anesthesia and surgically removed the pins from plaintiff's ankle. A new cast was applied and plaintiff was instructed again to use crutches and not bear any weight with her ankle. She was not, however, instructed to remain inactive.
Each time plaintiff visited Dr. Juneau he x-rayed her ankle. One of his concerns was the development of avascular necrosis in the talus, often a consequence of a fracture such as the one suffered by plaintiff. Avascular necrosis is a condition where the blood supply to the bone, or a part of the bone, is cut off causing the bone to die. Dr. Juneau explained the consequences of avascular necrosis:
... the portion of the bone that has lost its blood supply can lose its structural strength. It can lose its articulate integrity when the surface is no longer smooth, but instead it's roughened. It can collapse. If it collapses, it can cause abnormal mechanical stresses across the joint which can cause further deterioration of the articulate cartilage.
Dr. Juneau removed plaintiff's cast on January 4, 1982, and instructed her that she could begin putting weight on her ankle. Plaintiff visited Dr. Juneau on January 18 and on February 22. X-rays indicated an apparent onset of avascular necrosis, but plaintiff had recovered relatively well from the surgery. She had good motion in her ankle and the pain and occasional numbness was expected to subside.
Plaintiff next visited Dr. Juneau on October 15, 1982. X-rays taken at that time indicated to Dr. Juneau that a portion of the talus was dead. Plaintiff was only intermittently symptomatic, but continued intermittent swelling or pain was possible as well as further progression of microfractures and cystsas revealed by the x-raysor collapse of the talus.
Dr. Juneau saw plaintiff again on March 8, 1983. Objectively her condition was relatively the same as on the previous visit. Subjectively, she complained of pain in the ankle only when running. Dr. Juneau instructed plaintiff to do whatever she wanted that didn't cause pain in her ankle.
Dr. Juneau saw plaintiff on August 31, 1983, May 23, 1984, and in August of 1985. Plaintiff's condition over this time was very slowly degenerative. Dr. Juneau continued to consider the possibility that plaintiff might require an arthrodesis of the ankle, if she continued to worsen, but he could not give a firm prognosis. He was not convinced that an arthrodesis would be necessary, nor could he rule it out. He estimated plaintiff's disability of her foot at the time of her last visit to be 15%. If an arthrodesis becomes necessary, he estimated an average post-operative disability of 40% of the foot.
Plaintiff testified that she continues to suffer from pain, particularly when her environment is cold or damp. She can no longer participate in many of her former recreational pursuits. Plaintiff missed 99 days of work, using up her accummulated leave time before returning to work for half days. Her accummulated medical expenses at the time of trial totalled $10,421.27.
The trial court awarded plaintiff $130,421.27. Although high, the award is not above the limits of discretion afforded the trier of fact. We, therefore, find no abuse of discretion and will not disturb the award.

DECREE
For the reasons provided above we affirm the judgment of the district court except insofar as it denied DOTD's third-party demand against Plaquemines Parish. We reverse that portion of the judgment and now render judgment in favor of third-party plaintiff Department of Transportation and Development and against third-party defendant Plaquemines Parish Commission Council for one-half of all sums paid by Department of Transportation and Development under the judgment to the plaintiff.
AFFIRMED IN PART; REVERSED IN PART.