537 So.2d 1183 (1989)
Frederick J. MURPHY
v.
The CITY OF NEW ORLEANS, et al.
No. 88-CA-0675.
Court of Appeal of Louisiana, Fourth Circuit.
November 29, 1988.
Rehearing Denied February 16, 1989.
Writ Denied April 21, 1989.
*1184 Henican, James & Cleveland, C. Ellis Henican, Jr., Metairie, for plaintiff-appellant Frederick J. Murphy.
Berrigan, Danielson, Litchfield, Olsen & Schonekas, Walter I. Willard, New Orleans, for defendant-appellee Regional Transit Authority.
Before SCHOTT, C.J., and KLEES and PLOTKIN, JJ.
KLEES, Judge.
This suit arises from an accident in which plaintiff, Frederick Murphy, sustained injuries when he exited the rear door of a Louisiana Transit bus, stepped down and fell into a large hole at a bus stop adjacent to the driveway of the London Lodge Motel where he was a guest on Airline Highway in New Orleans. He ruptured his Achilles tendon and later suffered complications because of diabetes. Plaintiff filed suit against the State of Louisiana through the Department of Transportation and Development (the owner of the land where the bus stop was located), the City of New Orleans through the Department of Streets, the Regional Transit Authority (RTA), and Louisiana Transit Corporation, the common carrier.
After a bifurcated trial, the trial judge dismissed RTA and the City of New Orleans, finding no liability on their part but rendered judgment in favor of the plaintiff against the State. The jury also returned a verdict in favor of the plaintiff against Louisiana Transit Corporation. The trial judge later rendered judgment notwithstanding the verdict awarding an increase in both special and general damages and attributing percentage of fault accordingly: Louisiana Transit Corporation45%, the State10%, London Lodge Motel25% and the plaintiff20%. Plaintiff appeals the trial court's judgment insofar as it dismissed RTA and attributed fault to the London Lodge Motel.
Plaintiff argues on appeal that the trial judge erred when he dismissed RTA. Plaintiff contends RTA is liable because it had a duty, arising from statute and contract, to maintain the bus stop where the accident occurred.
RTA's enabling legislation, LSA-R.S. 48:1651, et seq., otherwise known as the "RTA Act", reads in part:
§ 1654(B)
The purpose for which the authority is created is to plan, design, lease as lessee, purchase, acquire, hold, own, construct, improve, have an equity in, finance, maintain, and administer a transit system within the metropolitan area to operate same or contract therefor, lease as lessor same for operation by private parties.
The term "maintain" as used in the aforementioned statute does not contemplate the surface and road repair generally attended to by local governmental bodies. Plaintiff's witness, Mr. Emmett Crockett, Director of Routes and Schedules for RTA, testified that when the State conferred upon RTA the authority to operate a transit system it conferred upon it the right to designate and use bus stops, establish routes and create schedules. He further testified that when RTA's Customer Service Department received a complaint with respect to a broken sidewalk, broken curb, large puddle or other hazardous condition, his department would alert the City and the City would correct the problem. Mr. Crockett also stated that there was no formal written agreement in existence at the time of the accident which required the RTA to do repair and surface work in the bus stop area.
Plaintiff also argues that RTA should be held liable by virtue of a contact which existed between the City and the State *1185 whereby the City assumed the State's duty of repairing certain designated roads under the contract. Plaintiff cites our decision in Guillotte v. The Department of Transportation and Development, 503 So.2d 618 (La.App. 4th Cir.1987). In Guillotte we considered a contract of maintenance between the State and Plaquemines Parish. Following expiration of the contract, the Parish continued to perform the tasks of maintaining the shoulders of state roads within Parish boundaries while it attempted to renegotiate the contract with the State. We found that since the Parish undertook maintenance responsibilities, it acquired the duty to maintain the shoulders properly. Guillotte, supra, at 621.
The instant case is similar to Guillotte in that both cases involve maintenance contracts between the State and the defendant local governmental bodies. Unlike Guillotte, the City of New Orleans in the present matter ceased maintenance and repair work of the roads when the contract with the State expired. At expiration of the contract, those duties previously performed by the City under the agreement reverted back to the State. The plaintiff did not refute this fact at trial and the maintenance contract between the City and State was received into evidence through stipulation by all parties.
Plaintiff also contends the RTA is liable because, as a public carrier, it breached the duty of care it owed passengers entering and leaving busses.
It is well settled that although a common carrier is not the insurer of the safety of its fare-paying passengers, it nevertheless is required to exercise the highest degree of care. Gill v. Doe, 479 So.2d 36 (La.App. 4th Cir.1985). In the matter before us, the record indicates and the plaintiff admits that he was a passenger on a bus owned by Louisiana Transit Corporation and not a RTA bus. In its role as a common carrier, Louisiana Transit Corporation solely and completely assumed the duty of transporting the plaintiff safely, exercising the highest degree of diligence from the time of boarding to his exit. Any duty the RTA assumed as a common carrier did not extend to passengers of other common carriers or to incidents not involving an RTA vehicle or caused by an RTA carrier. To find otherwise, would subject the RTA to liability for a boarding or exiting passenger on any bus, taxi, bicycle or a pedestrian who slips and falls in the area of an RTA bus stop.
After considering the evidence in the record, we conclude the trial court's findings that RTA, through the City of New Orleans, was not responsible for repairing the road where plaintiff's accident happened and that RTA owed no duty of care to the plaintiff were correct. Hence, the trial court properly dismissed both RTA and the City of New Orleans.
On appeal, the plaintiff also contends the trial judge erred by finding London Lodge Motel 25% negligent in causing his injury. Plaintiff argues that London Lodge Motel was never sued as a defendant nor were any allegations of fault directed at London Lodge in any of the pleadings and to find it at fault was fundamentally unfair.
The basis for assessing liability of non-parties to a suit is found in article 1812 of the Louisiana Code of Civil Procedure regarding Special verdicts. Article 1812(C)(2), as amended in 1983 reads as follows:
C. In cases to recover damages for injury, death, or loss, the court may submit to the jury special written questions inquiring as to:
. . . . .
(2) If appropriate, whether another person, whether party or not, other than the person suffering injury, death, or loss, was at fault, and, if so:
(a) Whether such fault was a legal cause of the damages, and, if so:
(b) The degree of such fault, expressed in percentage.
This section clearly allows the trial court to assess fault to London Lodge Motel, an unnamed party. Furthermore, the Louisiana Supreme Court considering the application of C.C.P. article 1812(C)(2) in its decision in Lemire v. New Orleans Public Service *1186 Inc., 458 So.2d 1308 (La.1984) stated, "With the adoption of comparative fault (C.C. art. 2323, effective August 1, 1980), the fault or non-fault, and the percentage of fault attributable to each person whether party to the lawsuit or not, has become relevant in the determination of damages to which an injured plaintiff is entitled." 458 So.2d at 1309.
Alternatively, plaintiff argues liability cannot attach to London Lodge Motel because it was not the owner of the ground where the plaintiff fell, but rather the State was.
Applying the law of negligence, we note that abutting property owners are under no duty to repair or maintain public walkways. Carpenter v. State Farm, 411 So.2d 1206 (La.App. 4th Cir.1982), writ denied, 415 So.2d 951 (La.1982). An exception to the general rule is where a defect is caused or created by the abutting property owner. Youngblood v. Newspaper Production Company, 135 So.2d 620 (La.App. 2nd Cir.1961). Likewise, the Louisiana Supreme Court recently held in Randall v. Feducia, 507 So.2d 1237 (La.1987) that an abutting property owner is not liable for negligent repair or maintenance of public walkways which are not on his property unless the defects were caused by him.
The record indicates that the owner of the London Lodge Motel was aware of the existence of the hole when he bought the motel. Mr. Jose LaFleur, the owner, testified that the hole was in existence for several years before he purchased the motel. In an affidavit, Mr. LaFleur stated that the hole was filled in by the owners of the motel. He also stated that he witnessed an accident, prior to plaintiff's accident, which occurred when a lady stepped from an airport bus and fell into the same hole. After that accident, Mr. LaFleur reported the hole to the City. Mr. LaFleur further testified that when the street flooded trucks and cars would drive on the curb and through the hole. Also exacerbating the condition of the hole was the use of the motel driveway by its patrons. The evidence reveals that patrons of the motel would often drive through the hole adjacent the motel's driveway when entering or exiting the motel parking lot. Based on this evidence, we find the trial court committed no error when it found that London Lodge Motel, by act and omission, significantly contributed to the hazardous condition at the bus stop area. Therefore, we find the trial judge correctly allocated 25% fault to London Lodge Motel, a non-party to the suit.
For the foregoing reasons, we find no manifest error on the part of the trial judge requiring reversal. The judgment of the trial court is affirmed.
AFFIRMED.
SCHOTT, C.J., concurs with reasons.
SCHOTT, Chief Judge, concurring:
The trial court apportioned fault among the parties as follows: Louisiana Transit Corporation (LTC), 45%; State of Louisiana, 10%; London Lodge Motel, 25%; Plaintiff, 20%. Appellant directed his appeal solely with respect to the exoneration from fault of RTA. He would have the allocations of fault changed and redistributed so as to exonerate London Lodge and reduce LTC's fault with this apportionment resulting: LTC, 20%; State, 10%; Plaintiff, 20%; and RTA, 50%.
I disagree with the majority's treatment of London Lodge's liability and agree with appellant that the trial court erred in assigning any fault to London Lodge. I know of no authority for holding the private property owner liable for a hazard existing on his neighbor's property. Liability does not attach because London Lodge's owner knew about the condition and has witnessed a previous accident taking place there, and it does not attach because he volunteered to fill in the hole once. If he had no duty to repair the defect he would not become liable because he stepped forward as a good citizen and good Samaritan and repaired it. As to London Lodge's patrons driving through the hole which was adjacent to the motel driveway, the fact remains that the hole was on the state's land and the state should not be relieved of its responsibility to the injured plaintiff *1187 because of the conduct of London's Lodge's patrons.
In any event, because I agree with the majority that RTA is not liable, all of this discussion about London Lodge's liability is academic because the only relief sought by appellant is the assignment of 50% of the fault to RTA. Appellant wants to exonerate London Lodge so as to make available for allocation to RTA the 25% of fault assigned to London Lodge by the trial court but he has no real interest in London Lodge's liability unless RTA is found to be at fault.
RTA is an independent body politic and a corporate and political subdivision of the state, R.S. 48:1654. Much of the discussions about RTA in the briefs of the parties and the majority opinion seem to treat RTA and the City of New Orleans as the same party. In order to hold RTA liable appellant must treat RTA as a governmental entity independent of the City. Appellant's principal argument for the imposition of liability on RTA is based on Mr. Crockett's testimony that RTA laid shells on bus stops where needed. Appellant states that if RTA had filled this hole with shells his injury would not have occurred. The reason RTA laid shells at stops was to protect its own passengers from injury and to avoid liability to them. But the performance of this work does not diminish the high degree of care owed by LTC to its customers to discharge them at a safe bus stop; and it does not supplant the duty owed to those customers by the owner of the land where the stop is located to make it reasonably safe.
I join in affirming the judgment of the trial court.
OPINION DISSENTING TO DENIAL OF REHEARING
PLOTKIN, Judge, is of the opinion that the rehearing should be grantedsee reasons.
I would grant a rehearing because we erred in our evaluation of RTA's duty to maintain bus stops and the non-party fault of London Lodge Motel.
Mr. Crockett testified that when a complaint is received relating to a broken storm drain, a broken sidewalk or a tremendous puddle, it is referred to the City of New Orleans for correction. However, on the contrary, hazards that relate to bus stops, are inspected and maintained by RTA, for the purpose of passenger safety. This subtle difference was overlooked. Therefore, RTA has a duty to maintain the established bus stops, pursuant to La.R.S. 48:1654(B).
The question of notice as to London Lodge's liability, should be reexamined. The only references in the pleadings are found in the answers of Louisiana Transit Company and D.O.T.D. Both defendants claim that the accident occurred as a result of third parties, over whom they have no control or responsibility. They did not identify any specific party or the London Lodge Motel. In my view, this is insufficient notice to a party that a non party may be assessed fault, for the first time at trial.