628 So.2d 1229 (1993)
Aaron J. ISTRE & Rebecca A. Istre, Plaintiff-Appellant,
v.
FIDELITY FIRE & CASUALTY INS. CO., Abbie T. Terry, Donald Bowyer, H & S Construction Co. Inc., Joseph B. Shelvin: Archie Thibodeaux Construction Co. Inc., Aetna Ins. Co., Defendants-Appellees.
No. 93-32.
Court of Appeal of Louisiana, Third Circuit.
December 8, 1993.
*1230 Homer Edward Barousse Jr., Crowley, for Aaron J. Istre and Rebecca A. Istre.
Christopher Richard Philipp, Lafayette, for Fidelity Fire & Cas. Ins. Co.
Edward O. Taulbee IV, Lafayette, for Thibodeaux Const. & Aetna.
Cyd Sheree Page, Lafayette, for City of Lafayette.
Before YELVERTON, KNOLL and THIBODEAUX, JJ.
YELVERTON, Judge.
Rebecca Istre's car was broadsided by one driven by Abbie Terry in an intersection in Lafayette. The intersection was controlled by a traffic light. The traffic light was not working because a backhoe operator for Archie Thibodeaux Construction Company, working on a project some distance from the intersection, had accidentally knocked out the electrical power. The City of Lafayette knew about the outage but did not warn motorists or manually control the intersection.
Rebecca Istre brought suit for personal injuries against Abbie Terry and her insurer, the construction company and its insurer, and the City of Lafayette. A jury awarded Rebecca Istre $17,000 in general damages and $20,500 in special damages, and found Abbie Terry 75% at fault and the construction company 25% at fault. The case against the City of Lafayette was tried by the judge, *1231 who found the City was not at fault and dismissed it.
The Istres (Rebecca's husband was also a plaintiff) brought this appeal, seeking three things: an increase in the award, a finding that the City was at fault, and a redistribution of fault among the three tortfeasors.
The construction company also appealed. It seeks a reversal of the finding as to its fault. It joins the Istres in seeking a reversal of the dismissal of the City. In the alternative, the construction company seeks a reduction of the award of damages.
The issues, therefore, are liability of the construction company, liability of the City, allocation of fault, and the amount of damages.

FACTS
Rebecca Istre was headed east on Ridge Road. Abbie Terry was going south in her car on Ambassador Caffery Parkway. The collision occurred in the intersection at 9:15 a.m. on August 18, 1988. City Police Corporal Ray Schexnayder was an eyewitness.
A thorough documentation of events and the number of reliable eyewitness accounts render the facts clear and for the most part uncontradicted. At around 8 a.m. Archie Thibodeaux Construction Company was operating a backhoe beside West Congress Street some distance away from the intersection where the accident happened. The backhoe came in contact with some utility lines and caused a power outage in the south part of Lafayette. A City inspector on site called the Lafayette Utility Department which received its first report of the power outage at 8:29 a.m. The City of Lafayette Police Department received reports of the outage at the intersection at 8:35 a.m. Corporal Schexnayder was dispatched to the area. He first went to the intersection of Ambassador Caffery and Johnston Streets. He then went to the Ambassador Caffery/Ridge Road intersection. There, he saw that the lights were out but that motorists on their own volition were treating the intersection as a 4-way stop. Corporal Schexnayder left and went to a third intersection, then turned around and returned to the Ambassador Caffery/Ridge Road intersection. As he was driving up he saw the accident happen. It was 9:15 a.m. Power was restored at 9:18 a.m.
The jury found that Rebecca Istre was not at fault but that Abbie Terry was. Rebecca Istre was attempting to make a left turn from Ridge onto Ambassador Caffery. She testified that she could see the light was out and was being very careful. Abbie Terry's testimony was presented to the jury by way of deposition. She testified that she was traveling down Ambassador Caffery and thought the light for her was green. She did not stop and she hit the Istre car on the driver's side. Corporal Schexnayder and another witness, Randall Cook, testified that the light was not working, and that it had been out for some time before the collision. The substance of their testimony was that every driver except Abbie Terry was treating the intersection as a four-way stop.

LIABILITY OF THE CONSTRUCTION COMPANY
The jury was asked two questions regarding the construction company: whether it was negligent, and whether its conduct was a cause of injury to plaintiff. It answered both yes.
The construction company argues that, while its backhoe negligently knocked out electrical power, this was not a cause in fact of the accident. Its argument is that Abbie Terry knew or should have known the power was out, and once this knowledge came to her, the construction company's action stopped being a cause in fact and Abbie Terry's action became the only cause in fact.
Cause in fact was a jury question which the jury decided against the construction company. The jury's reasoning could have been: The backhoe operator put the traffic light out. If the light had been on this accident would not have happened. The *1232 light being out was a cause in fact in bringing about Rebecca's injuries. The jury was not clearly wrong.
The construction company's main argument is that its duty to avoid knocking out electrical power does not extend to the risk that one hour later, a driver at an intersection four miles away, will fail to see that traffic lights are not working and that other drivers were treating the intersection as a four-way stop, and that the non-observant driver will run the four-way stop, out of turn, and hurt another driver who was entering the intersection in obedience to a four-way stop rotation. To this it pleads that the company could not have known that engaging this one power line would create a general outage affecting signal lights four miles away.
We reject this argument. This backhoe operator knew the risk of his backhoe knocking out power. His construction company knew or should have known the risks to people and property caused by power outages, and the predictability of widespread effects and delays in restoring power. The increased risk of an accident caused by this defendant's conduct was still present when the accident occurred. This accident to this plaintiff was reasonably foreseeable. This defendant is liable to the plaintiffs for the breach of its duty.

LIABILITY OF THE CITY OF LAFAYETTE
The trial judge ordered an involuntary dismissal of the City, under La.Code Civ.P. art. 1672(B), finding that the plaintiffs had not met their burden of proving that the City owed a duty to dispatch additional police officers to control traffic at the intersection. In reaching this decision, the trial judge stated that it was the practice in Lafayette for police, in a non-functioning signal light situation, to observe the intersection but not to intervene if traffic is moving safely and in accordance with the rules of a four-way stop. Finding that the facts of the present case justified non-intervention, the trial judge found no duty ever arose for the City to take additional action. The trial judge recognized that the parties had stipulated that the availability of police units for traffic control was not an issue.
On this appeal, all appellants argue that, in finding no duty was owed by the City, the trial judge erred on a question of law. They cite principally a case decided by this circuit, Hardy v. State, Through Dept. of Highways, 404 So.2d 981 (La.App. 3d Cir.), writ denied, 407 So.2d 741 (La.1981). That case involved a malfunctioning traffic light in the City of Natchitoches. The responsibility to repair the lights belonged to the State. The City of Natchitoches, on learning that the light was malfunctioning, called the State to make repairs, and did nothing else. The trial judge held that the City was not negligent. This court reversed finding that the City had a duty to warn traffic, that its failure to do so was negligence, and that it was liable for damages caused by the malfunction. We said:
Irrespective of whose responsibility it was to make repairs of the signal light or lights, the City of Natchitoches at least had a duty to see that the drivers of vehicles on the two highways were warned of the danger until it could be corrected. Gaspard v. Stutes, [380 So.2d 201 (La.App. 3rd Cir.1980)] supra. The City seeks to excuse itself on the grounds that its police force was completely absorbed in other duties of an emergency nature. This excuse cannot exonerate the City from the responsibility for its negligent failure to make provision for warnings.
In the present case, the City had a unit at the scene. Instead of using the unit's flashing lights to warn, and/or the police officer himself taking manual control of traffic, the City did nothing. It sought to excuse this neglect by the testimony of the officers who observed, briefly, that traffic was moving safely like at a four-way stop sign. However, the fact that most drivers discovered the light was out in time to adapt and avoid accidents was no assurance that all would. *1233 Abbie Terry did not. A municipality can owe a duty to an imprudent motorist. Burge v. City of Hammond, 494 So.2d 539 (La.1986). It also surely owes a duty to protect an innocent driver from the imprudence of that motorist. We find in the present case that the duty enunciated by Hardy, supra, was violated by the City, and that its failure to warn motorists or take charge of the intersection was a cause-in-fact of the accident.

ALLOCATION OF FAULT
The jury's finding of ratio fault, Abbie Terry to the construction company, was three to one. This was a finding of fact as to which there is no clear error. We will therefore allocate the percentage of fault of the City, deduct that from 100%, then reallocate the fault of the other parties according to the jury's ratio.
Considering the time that the City had from its first notice of the outage, considering the City's presence at the scene and its immediate capability of taking charge of the intersection, and considering its superior awareness of the danger and its traditional duty to protect motorists from such situations, we find the City's percentage of fault to be 40%.
Accordingly, the fault of the other parties is proportioned 45% to Abbie Terry and 15% to the construction company.

DAMAGES
There is no abuse of discretion in the awards.
For these reasons, the judgment of the trial court is affirmed in all respects except as to the liability of the City of Lafayette and allocation of fault among the tortfeasors; the dismissal of the City is reversed, and judgment is rendered in favor of the plaintiffs and against the City for the damages awarded; the percentages of fault of the three tortfeasors are reallocated: Abbie Terry, 45%; the City, 40%; and the Archie Thibodeaux Construction Company, 15%, and the judgment is amended accordingly. Costs below will be shared by the defendants in the proportions of their liability. Costs of appeal will be paid by the City.
JUDGMENT AFFIRMED IN PART; REVERSED IN PART; MODIFIED, AND RENDERED.