795 So.2d 302 (2001)
CLECO CORPORATION
v.
Leonard JOHNSON and Legion Indemnity Company.
No. 2001-CC-0175.
Supreme Court of Louisiana.
September 18, 2001.
*303 Lamar M. Richardson, Jr., Mandeville, Counsel for Applicant.
William L. Brockman, Metarie, Benjamin F. Davis, Howard B. Kaplan, Metarie, Counsel for Respondent.
WILLIAMS, Justice Pro Tempore.[*]
This court granted certiorari to determine whether a utility company has a cause of action, through subrogation, to recover for direct physical damages sustained by its customers to their electrical equipment caused by a power surge when a driver of a dump truck struck a utility pole. We hold that a cause of action exists for the customers to recover damages to their property resulting from the power surge caused by defendant's negligence. Furthermore, accepting the allegations in plaintiff's petition as true, we presume, for the purposes of this opinion, that Cleco has been subrogated to the claims of its customers. Accordingly, we remand this case to the trial court for further proceedings.

FACTS AND PROCEDURAL HISTORY
On October 15, 1997, defendant, Leonard Johnson, was operating a commercial dump truck in a subdivision in Mandeville. Johnson backed the truck into a utility pole owned by plaintiff, Cleco Corporation, an electric utility company. The impact caused certain mechanical wire ties to break, and one of the conductor supports snapped, causing a voltage surge. The surge caused property damage to electrical appliances and equipment of various Cleco customers. Cleco paid a total of $94,020.45 to the one hundred eighty-seven residents and businesses in the area to *304 compensate them for damages to their electrical equipment.
Cleco filed suit against Johnson and his insurer, Legion Indemnity Company, to recover the amounts paid to its customers for their damages. Cleco alleged that it has been subrogated to the rights of its customers. Defendants filed a peremptory exception of no cause of action, or, alternatively, motion for summary judgment, contending that Cleco has no cause of action for the recovery of amounts paid to its customers for damages caused by the power surge. In response, Cleco filed a cross motion for summary judgment. The trial court denied both motions for summary judgment and the exception of no cause of action without assigning written reasons.
Defendants filed an application for supervisory writs, and the court of appeal granted the writ application, reversed the trial court's ruling, and granted defendants' exception of no cause of action, citing Professional Answering Service, Inc. v. Central Louisiana Electric Co., 521 So.2d 549 (La.App. 1 Cir.1988). Cleco Corporation v. Johnson, 99-0808 (La.App. 1 Cir. 12/22/00) 775 So.2d 1228. Cleco sought review of the court of appeal's decision with this court, and this court unanimously granted the writ application and remanded this matter to the court of appeal "for briefing and opinion and argument in accordance with their rules." Cleco Corporation v. Johnson, 00-0389 (La.4/28/00), 760 So.2d 1164.
On remand, the court of appeal affirmed its previous disposition, citing Professional Answering Service, Inc. v. Central Louisiana Electric Co., Inc., 521 So.2d 549 (La. App. 1 Cir.1988) and determined that Cleco may seek recovery for damages to its utility pole, but neither Cleco nor its customers have a cause of action for damages sustained by the customers.[2]Cleco Corporation v. Johnson, 99-0808 (La.App. 1 Cir. 12/22/00), 775 So.2d 1228.
Cleco filed an application for certiorari, and by an order dated March 23, 2001, this court granted the application. Cleco Corporation v. Johnson, 01-0175 (La.3/23/01), 787 So.2d 1005.

DISCUSSION
The function of the peremptory exception of no cause of action is to question whether the law extends a remedy to anyone under the factual allegations of the petition. Louisiana Paddlewheels v. Louisiana Riverboat Gaming Com'n, 94-2015 (La.11/30/94), 646 So.2d 885. The exception is tried on the face of the pleadings and the court accepts the facts alleged in the petition as true, determining whether the law affords relief to the plaintiff if those facts are proved at trial. Barrie v. V.P. Exterminators, Inc., 93-0679 La. (10/18/93), 625 So.2d 1007. In reviewing a trial court's ruling sustaining an exception of no cause of action, the court of appeal and this court should subject the case to de novo review because the exception raises a question of law, and the lower court's decision is based only on the sufficiency of the petition. Mott v. River Parish Maintenance, Inc., 432 So.2d 827 (La.5/23/83).
In this case, Cleco alleges that Johnson caused physical damage to the property of one hundred eighty-seven of its customers when he struck Cleco's utility pole. Notably, however, it is not the customers who have brought these claims against Johnson. Rather, Cleco is the plaintiff seeking $94,020.45 in compensation for the money it expended in settling the claims of the *305 customers. Consequently, two issues are presented herein: (1) whether Cleco's customers had a claim against Johnson for the damage suffered, and (2) whether Cleco is entitled to assert such claim. Because we did not grant the writ application to address the issue of whether Cleco is subrogated to the claims of its customers, we will dispose of it as a preliminary matter.
Assuming that Cleco's customers is entitled to pursue a cause of action against Johnson for the damage caused to their property when Johnson struck Cleco's utility pole, Cleco is only permitted to bring that claim if it currently holds its customers' claims through an assignment of rights, sale of a litigious right, conventional or legal subrogation, or some other legal theory.
In its petition, Cleco asserts:
Cleco has paid in its own name the damages reflected on Exhibit "B" to its customers and has been subrogated to their rights against defendants herein.
Whether Cleco will be able to prove it was subrogated to its customers' rights is not before us. Instead, the review of an exception of no cause of action requires that we presume the allegations of the petition for damages are true and determine whether the law affords a remedy to Cleco. Based on the petition for damages, Cleco has been subrogated to the claims of its customers. Accordingly, we now turn to the issue which prompted us to grant Cleco's application for writ of certiorari whether Cleco's customers had a claim against Johnson for the physical damage to the customers' property after Johnson struck a utility pole owned by Cleco.
To support its conclusion that neither Cleco nor its customers have a cause of action for the damages sustained by the customers, the court of appeal explained that since the damages suffered by Cleco's customers do not fall within the scope of the duty imposed on the truck driver not to negligently damage Cleco's power lines, there is insufficient ease of association between the duty breached and the damages sustained. Cleco contends that the court of appeal erred in applying a rigid prohibition against third party damage claims, rather than analyzing and applying the "ease of association" test. Cleco also urges that the appellate court expanded Professional Answering Service to constitute a blanket prohibition.
In Professional Answering Service, the court reasoned that under a duty/risk analysis, a person who damages electrical lines does not have a duty to customers who suffer economic losses or property damages as a result. Professional Answering Service relied heavily on this court's decision in PPG Industries, Inc. v. Bean Dredging, 447 So.2d 1058 (La.1984), which involved a situation where the defendant's dredging operations damaged a gas pipeline owned by Texaco. Texaco had a contract to supply gas to PPG. As a result of the damage to the pipeline, PPG was forced to obtain gas from other sources, so PPG sued Bean Dredging, seeking recovery of the additional costs expended to obtain gas. This court held that PPG's damages did not fall within the scope of the duty not to damage a pipeline owned by Texaco. We stated:
There is clearly an ease of association in the present case between the rule of law which imposes a duty not to negligently damage property belonging to another and the risk of injury sustained by Texaco because of the damage to its property. As noted, however, a rule of law is seldom intended to protect every person against every risk. It is much more difficult to associate the same rule of law, in terms of the moral, social and economic values involved, with the risk *306 of injury and the economic loss sustained by the person whose only interest in the pipeline damaged by the tortfeasor's negligence arose from a contract to purchase gas from the pipeline owner. It is highly unlikely that the moral, social and economic considerations underlying the imposition of a duty not to negligently injure property encompass the risk that a third party who has contracted with the owner of the injured property will thereby suffer an economic loss.
Moreover, imposition of responsibility on the tortfeasor for such damages could create liability "in an indeterminate amount for an indeterminate time to an indeterminate class." [citation omitted]. If any of PPG's employees were laid off while PPG sought to obtain another source of fuel for its plant, they arguably sustained damages which in all likelihood would not have occurred but for defendant's negligence. If any of PPG's customers had contracted to purchase products that PPG could not produce and deliver because of the accident, perhaps they sustained damages which in all likelihood would not have occurred but for defendant's negligence. Because the list of possible victims and the extent of the economic damages might be expanded indefinitely, the court necessarily makes a policy decision on the limitation of recovery of damages.
Id. at 1061-62.
Unlike the plaintiff in Bean Dredging, Cleco is not attempting to recover from any economic damages it sustained as a result of damage to a third party's property. By contrast, it is seeking to recover amounts it expended as a result of damage to its own property, the pole, which led to damages to the customers' property. There is no "indeterminate class" in this case. Cleco alleges that it compensated one hundred eighty-seven customers for the direct physical damage to the customers' equipment as a result of the power surge caused by defendants' actions. A trier of fact may find that there is an ease of association between a person who damages an electrical pole, causing a power surge and the damage to electrical equipment in the homes and businesses supplied with power by the damaged electrical pole. Defendants' action was not an indirect cause of damage to the equipment; rather, defendants' action was the direct cause.
A similar issue was presented in Istre v. Fidelity Fire & Casualty Ins. Co., 628 So.2d 1229 (La.App. 3 Cir.1993); writ denied, 634 So.2d 852 (La.1994). In that case, a backhoe operator working for a construction company came into contact with electrical lines causing a power outage that knocked out electrical power to a traffic signal some distance away. Approximately one hour later, the plaintiff was involved in an accident due to the traffic light outage. The plaintiff subsequently filed suit against several parties, including the construction company. In finding the construction company liable, the court stated:
The construction company's main argument is that its duty to avoid knocking out electrical power does not extend to the risk that one hour later, a driver at an intersection four miles away, will fail to see that traffic lights are not working and that other drivers were treating the intersection as a four-way stop, out of turn, and hurt another driver who was entering the intersection in obedience to a four-way stop rotation. To this it pleads that the company could not have known that engaging this one power line would create a general outage affecting signal lights four miles away.
We reject this argument. This backhoe operator knew the risk of his backhoe *307 knocking out power. His construction company knew or should have known the risks to people and property caused by power outages, and the predictability of widespread effects and delays in restoring power. The increased risk of an accident caused by this defendant's conduct was still present when the accident occurred. This accident to this plaintiff was reasonably foreseeable. This defendant is liable to the plaintiffs for the breach of its duty.
Id. at 1232.
We find that the direct physical damage to the customers' equipment, for which Cleco attempts to recover, is more akin to the direct physical damages suffered by the plaintiff in Istre, rather than the indirect economic damages at issue in Professional Answering Service. If it is foreseeable that damage to electrical lines could cause a power outage and a resulting automobile accident, a trier of fact may conclude that it is foreseeable that such damage could cause a power surge which would harm electrical customers' equipment.
Accepting the factual allegations in Cleco's petition as true, for the aforementioned reasons, we find that the law extends a remedy to Cleco and its customers. Accordingly, we hold that the court of appeal erred in granting defendants' exception of no cause of action.

DECREE
The court of appeal's decision to reverse the trial court's ruling and grant defendants' exception of no cause of action is hereby reversed, and this matter is remanded to the trial court for further proceedings.
REVERSED AND REMANDED.
KIMBALL, J., concurs and attaches reasons.
VICTORY, J., dissents and assigns reasons.
TRAYLOR, J., dissents for reasons assigned by VICTORY, J.
KIMBALL, J., concurring
Although I agree with the decision reached by the majority in this case, I write separately to point out its effect upon claims by an electric company's customer against a tortfeasor for his act that disrupts power and in turn physically damages property in the customer's home. Previously, some Louisiana courts have treated these as claims for negligent interference with contract. See, e.g., Community Coffee Co. v. Tri-Parish Constr. & Materials Inc., 490 So.2d 1109 (La.App. 1 Cir.1986); Desormeaux v. Central Indus., Inc., 333 So.2d 431 (La.App. 3 Cir.1976). The claims were therefore systematically barred under the rule against claims for tortious interference with contract that was set forth in Forcum-James Co. v. Duke Transp. Co., 231 La. 953, 93 So.2d 228 (1957). That rule prevented recovery by customers who might otherwise recover if our traditional duty-risk analysis were applied to the claim instead. The majority today has chosen to handle these claims on a case by case basis using the duty-risk analysis, which in my view is the preferable approach.
VICTORY, J., dissenting.
I dissent from the majority opinion because Cleco is prohibited from recovery in this case under the concepts announced in PPG Industries, Inc. v. Bean Dredging, 447 So.2d 1058 (La.1984). Admittedly, this is a difficult area of the law. But this Court made a "policy decision" in PPG Industries almost 20 years ago not to allow damages similar to the damages in this case using the "ease of association" test *308 "because the list of possible victims and the extent of the economic damages might be expanded indefinitely." 447 So.2d at 1062. In my view, having established the law in 1984, the Court should refrain from expanding recovery of damages in this area and leave such "policy decision[s]" to the Legislature.
Part of the majority's error is in characterizing the damages to Cleco's customers' equipment as "direct physical damage," which it uses to distinguish this case from the prohibition of recovery set out in PPG Industries, as follows:

Unlike the plaintiff in Bean Dredging, Cleco is not attempting to recover from any [sic] economic damages it sustained as a result of damage to a third party's property. By contrast, it is seeking to recover amounts it expended as a result of damage to its own property, the pole, which led to damages to the customers' property. There is no "indeterminate class" in this case. Cleco alleges that is compensated one hundred eighty-seven customers for the direct physical damage to the customers' equipment as a result of the power surge caused by defendants' actions. A trier of fact may find that there is an ease of association between a person who damages an electrical pole, causing a power surge and the damage to electrical equipment in the homes and businesses supplied with power by the damaged electrical pole. Defendants' action were not an indirect cause of damage to the equipment; rather, defendants' action was the direct cause. (Emphasis added.)
Slip Op. at 6, 7.
However, the only party to suffer "direct physical damage" to its property was Cleco. The equipment the defendants damaged was Cleco's electric pole, and there is no doubt that Cleco is entitled to recover for the direct physical damage to its equipment caused by defendants. Cleco is clearly a primary victim of the allegedly negligent act of the defendants.
When this property damage caused a power surge, which in turn damaged the Cleco's customers' electrical equipment, Cleco's customers became secondary victims of the defendants' allegedly negligent act. There is no doubt that "but for" the defendants' act, Cleco's customers' property damage would not have occurred, but that does not entitle them to recover. What if Cleco had a customer who bought electricity from Cleco, and who in turn supplied it to others? As a result of the accident, Cleco's customer's equipment was damaged and in turn, his customer's equipment was also damaged. Would this tertiary victim also be allowed to recover? "But for" the defendants' act in hitting the power line, its damages would also not have occurred. However, our law does not allow all victims to recover for all injuries, just as all damages are not recoverable. As we stated in PPG Industries, "the rule of law which prohibits negligent damage to property does not necessarily require that a party who negligently causes injury to property must be held legally responsible to all persons for all damages flowing in a "but for" sequence from the negligent conduct." Id. at 1061.
The problem with expanding recovery in this area is clearly illustrated by the majority's citing the case of Istre v. Fidelity Fire & Casualty Ins. Co., 628 So.2d 1229 (La.App. 3 Cir.1993), writ denied, 634 So.2d 852 (La.1994), and quoting from it, apparently with approval. In Istre, a construction company damaged some utility lines which caused a power outage. As a result of the power outage, a distant traffic light ceased to function and an automobile accident occurred. Istre went much further than the instant case, allowing the *309 victim of the traffic accident to recover from the construction company personal injury and unspecified special damages, not merely property damages. In addition, Istre used very broad language in allowing such recovery, such as the "predictability of widespread effect and delays in restoring power." It is one thing to expand recovery to a situation where a Cleco customer's electrical equipment that is physically connected to Cleco's lines or poles is damaged by a surge caused by the defendant's vehicle hitting a pole; it is quite another to seemingly approve of recovery for personal injuries and other unspecified "special damages" when there is no such physical connection between the plaintiff and his or her property and the affected damaged electric line, and the plaintiff is not a primary or secondary victim, but a tertiary victim.[1] In my view, the damages in both this case and Istre fall into the type not recoverable under PPG Industries, and the Court should not be indicating approval of a case that goes far beyond the instant case.
Finally, the majority errs on the subrogation issue. Cleco's petition merely alleges that "it has paid in its own name the damages ... to its customers and has been subrogated to their rights against defendants herein." This is a legal conclusion, not an allegation of fact, and is not admitted as true for the purposes of an exception of no cause of action. Cleco has not alleged it obtained a conventional subrogation, and has no legal subrogation because, under the facts alleged, it was not liable for its customers' property damage because it was not negligent. La. C.C. art. 1829[2]. Thus, because Cleco was not liable with defendants for the damage to Cleco's customers' property, absent a conventional subrogation, it has no cause of action against defendants even if its customers do.
NOTES
[*] Judge Felicia Toney Williams of the Second Circuit Court of Appeal, assigned as Justice Pro Tempore, sitting for Associate Justice Bernette J. Johnson; Retired Judge Robert L. Lobrano, assigned as Justice Pro Tempore, sitting for Associate Justice Harry T. Lemmon.
[2] Neither party sought writ of certiorari concerning the court of appeal's holding that Cleco may seek recovery for the direct damages to the utility pole. Therefore, that issue is not before this court.
[1] In Istre, the contractor damaged the utility line which caused the traffic light to go out. The power outage did not injure the traffic accident victim, the outage damaged the light, which was owned by the City of Lafayette. The City would be in the same position as Cleco's customers are in this caseboth are secondary victims who suffered physical damage to their property. One more step removed was the injured driver of the vehicle, who, because the traffic light went out, suffered personal injuries in a traffic accident. Further indirect damages could go on indefinitely, which is why this Court drew the line in PPG Industries, prohibiting recovery for indirect economic losses.
[2] Civil Code Article 1829 defines legal subrogation, as applicable to this case, as follows: "Subrogation takes place by operation of law:... (3) In favor of an obligor who pays a debt he owes with others or for others and who has recourse against those others as a result of the payment." La. C.C. art. 1829. As this Court has stated, "Article 1829(3) is an exception to the general rule that subrogation does not take place when a third person pays the debt of another." Martin v. Louisiana Farm Bureau, 638 So.2d 1067, 1068 (La.1994). "Due to the exceptional nature of subrogation by operation of law, the right is strictly construed." Id. Thus, "[t]he initial inquiry under article 1829(3) is whether [Cleco] is bound `with ... or for others.'" Id.