799 So.2d 710 (2001)
Louise PARDUE
v.
AT&T TELEPHONE COMPANY, et al.
No. 01-0762.
Court of Appeal of Louisiana, Third Circuit.
October 31, 2001.
*711 Christopher J. Roy, Sr., Roy Law Office, Alexandria, LA, Counsel for Louise Pardue.
Albin Alexandre Provosty, Provosty, Sadler, deLaunay, Alexandria, LA, Counsel for Central Louisiana Electric Company, Inc.
Court composed of JOHN D. SAUNDERS, BILLIE COLOMBARO WOODARD and MARC T. AMY, Judges.
AMY, Judge.
The plaintiff alleges that she sustained injury while holding the handset of a cordless telephone due to what she alleges was an acoustic shock resulting from a power surge. The electric utilities provider was named as a defendant due to what the plaintiff maintained was negligent maintenance of its power lines. Summary judgment was granted in favor of the electric utilities provider. The plaintiff appeals. For the following reasons, we affirm.

Factual and Procedural Background
The plaintiff, Louise Pardue, alleges that, on December 3, 1995, she was at her home and, at the time of the events at issue, speaking on a cordless telephone. She contends there was a sudden "explosion" in the handset and, simultaneously, the electricity went out at her home. After Central Louisiana Electric Company (CLECO) was notified of the outage, personnel reported to the scene, restored electricity, and allegedly informed Ms. Pardue that a dead squirrel was found on *712 the line. According to Ms. Pardue's expert, the squirrel's presence on the lines caused an electrical surge into the ground system that was shared by the telephone line. Although the expert stated that it would have been "a very difficult thing" to get an electrical shock from a cordless telephone, he opined that the electrical surge created an acoustical shock, i.e., a loud noise.
Ms. Pardue contends that as a result of the incident, she immediately developed a headache and experienced ringing in her ear. Soon thereafter, she developed problems in her neck, shoulder, arm, and foot. Ms. Pardue filed suit, seeking damages related to the alleged injuries. Named as defendants were the telephone manufacturer, which was eventually dismissed as a defendant, and CLECO. As for CLECO, the plaintiffs allegation is essentially that the utilities provider was negligent in failing to adequately trim the trees around the line so as to prevent the squirrel's interference with the transformer.
CLECO filed a motion for summary judgment asserting that no genuine issues of material fact exist regarding its liability for any damages. The trial court found in CLECO's favor, concluding the plaintiff would be unable to establish that CLECO's failure to trim the trees surrounding the line was a cause-in-fact of the injuries sustained by the plaintiff. The court stated, in part:
[B]ased upon the facts of this case where we don't know that the squirrel came from the tree, or whether it climbed the pole that the transformer was on, or it climbed another tree, or another pole. I think that when you do the first analysis, the "but for", you can't answer that; and when you can't answer it, under the jurisprudence, then the plaintiffs action fails and a motion for summary judgment in this instance is warranted.
The plaintiff appeals, contending that statements from her expert witness, whose deposition she submitted in opposition to the motion for summary judgment, created genuine issues of material fact.

Discussion
La.Code Civ.P. art. 966(B) requires that a summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." Since, CLECO, the party moving for summary judgment, would not have been required to bear the burden of proof at trial, it was not required to negate all of the elements of the plaintiff's claim. La.Code Civ.P. art. 966(C)(2). Rather, it was only required to point out "an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." Id. The plaintiff was then required to submit factual support sufficient to establish that she would be able to satisfy her evidentiary burden of proof at trial. Id. If she failed to do so, at that point, no genuine issue of material fact remained. Id. Appellate review of a trial court's action on a motion for summary judgment is de novo. Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181, 99-2257 (La.2/29/00); 755 So.2d 226.
Negligence cases such as this one require consideration of the duty/risk analysis. See Perkins v. Entergy Corp., 00-1372 (La.3/23/01); 782 So.2d 606. Imposition of liability under this analysis requires that the plaintiff prove:
(1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant failed *713 to conform his conduct to the appropriate standard (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiffs injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and, (5) actual damages (the damages element).
Roberts v. Benoit, 605 So.2d 1032, 1051 (La.1991) (on rehearing).
In opposition to the motion for summary judgment, the plaintiff submitted the deposition of expert witness Robert T. Nethken. He explained that he examined the scene and concluded that CLECO's poor tree trimming around the lines allowed the squirrel causing the power outage, access to the transformer. Although he admitted that there was no evidence regarding the squirrel's travel path to the transformer, he felt that the tree closest to the transformer was the most probable route.
As can be seen from its reasons above, the trial court concluded that the plaintiff would be unable to demonstrate that any negligence by CLECO was the cause-infact of her injuries. In her brief to this court, she alleges that this determination was in error due to the presence of her expert's opinion testimony regarding the potential for animal access to the transformer. See Willis v. Medders, 00-2507 (La.12/8/00); 775 So.2d 1049. She further refers this court to Estate of Adams v. Home Health Care of Louisiana, 00-2494, p. 1 (La.2/15/00); 775 So.2d 1064, wherein the Louisiana Supreme Court stated that "[c]ausation is an issue of fact that is generally decided at the trial on the merits." Although this is a consideration, we point out the court's inclusion of the term "generally" in the statement.
Furthermore, without addressing any problems that may exist as to the plaintiff's burden of proving that the defendant's substandard conduct was a cause-in-fact of her injuries, we address the plaintiffs inability to satisfy another element of the duty/risk analysis, legal cause or scope of the duty. As explained in Todd v. State through Social Serv., 96-3090, p. 6 (La.9/9/97); 699 So.2d 35, 38: "`Cause' in legal cause demands an inquiry into whether a legal standard of care exists and requires delving into policies for and against extending the asserted legal standard of care to protect the particular plaintiff against the particular harm." Additionally, "a risk may not be found within the scope of a duty where the circumstances of that particular injury or that plaintiff could not be reasonably foreseen or anticipated, because there was no ease of association between that risk and the legal duty." Id. at p. 7; 39. While cause-in-fact determinations are factual in nature, the legal cause or scope of the duty determination is a legal one. Id.
In this case, it appears to be uncontested that a squirrel gained access to the transformer, causing the power outage. Even assuming CLECO had a duty to maintain the trees surrounding its lines, we do not find that the scope of that duty extends to protect the plaintiff under the particular facts of this situation. Ms. Pardue claims she was at home, talking on a cordless telephone. In this case, if all allegations are proven true, not only did an animal gain access to the transformer, the resulting outage caused an "acoustic" shock sufficient to result in serious injury.[1] *714 In the least, the circumstances of this "particular injury or [this] plaintiff could not be reasonably foreseen or anticipated." Todd, 96-3090, p. 7; 699 So.2d at 39. Simply put, under the particular facts and circumstances of this case, there is no "ease of association between that risk and the legal duty." Id. Thus, even if every allegation made by the plaintiff is supported, we conclude that imposition of liability is improper in this case.
Accordingly, the granting of the motion for summary judgment was appropriate.

DECREE
For the foregoing reasons, the summary judgment entered by the trial court is affirmed. All costs of this appeal are assigned to the plaintiff, Louise Pardue.
AFFIRMED.
SAUNDERS, J., concurs and assigns written reasons.
WOODARD, J., concurs in the result.
SAUNDERS, J., concurring.
I agree on the result reached in this case, but it is not necessary to discuss the issue of "legal cause" for two reasons. First, it is not necessary because we are affirming the trial judge's decision who did not reach this issue. Second, the Plaintiff did not show how the squirrel reached the transformer. It is unclear whether he climbed the pole, jumped from a branch of a tree, etc. If the Plaintiff was able to show that the squirrel climbed the tree and jumped from the branches, we would be faced with a different scenario wherein an "ease of association" analysis may or may not be appropriate.
NOTES
[1] It is this set of unusual facts that distinguishes the instant case from Cleco Corp. v. Johnson, 01-175 (La.9/18/01); 795 So.2d 302, a case recently rendered by the Louisiana Supreme Court and advanced by the plaintiff. In Johnson, the utility provider acted as the plaintiff, filing suit against the driver of a vehicle that collided with a utility pole. The utility provider sought recovery for payments provided to its customers who sustained damage as the result of an electrical surge caused by the collision. The supreme court considered whether the utility provider had a cause of action against the driver and stated: "A trier of fact may find that there is an ease of association between a person who damages an electrical pole, causing a power surge and the damage to electrical equipment in the homes and businesses supplied with power by the damaged electrical pole." Id. at p. 4; 306. Importantly, the supreme court added that, in that case, "Defendants' action was not an indirect cause of damage to the equipment; rather, defendants' action was the direct cause." Id. Without addressing whether Cleco's allegedly negligent actions in the present case were a direct or indirect cause of the plaintiff's injury in this case, we point out that the factual background is only superficially similar. Unquestionably, the background of the incident in Johnson may be said to be traditional, i.e., foreseeable, in that it involved a vehicle colliding with a pole. This collision caused a voltage surge and damaged connected appliances. The instant case is strikingly less "traditional." Rather, the alleged negligence may have permitted an animal to enter a transformer, causing an outage and resulting in, not an electrical surge, but an "acoustical" surge. This surge then caused significant injury not from an attached appliance, but a cordless telephone. Even if the scenario alleged by the plaintiff is accepted as true, it is undoubtedly more unique and presents a less foreseeable situation than that encountered by the supreme court in Johnson.