STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

04-1657


RANDY JAMES HENRY, ET AL.

VERSUS

DANNY L. BARLOW, ET AL.


**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2001-5156
HONORABLE WILFORD D. CARTER, DISTRICT JUDGE

**********

**MARC T. AMY**
**JUDGE**

**********

Court composed of Sylvia R. Cooks, Marc T. Amy, and Glenn B. Gremillion, Judges.

**REVERSED AND REMANDED.**

Steven Broussard
Broussard & Hart, L.L.C.
1301 Common Street
Lake Charles, LA   70601
(337) 439-2450
COUNSEL FOR PLAINTIFFS/APPELLEES:
    Randy James Henry
    Connie Henry

Albin A. Provosty
Provosty, Sadler, deLaunay, Fiorenza & Sobel
Post Office Drawer 1791
Alexandria, LA 71309-1791
(318) 445-3631
COUNSEL FOR DEFENDANT/APPELLANT:
    Cleco Utility Group, Inc.

**Earl G. Pitre**
**Pitre, Halley & Sikich**
**Post Office Box 3756**
**Lake Charles,   LA 70602**
**(337) 494-0800**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**USAgencies Casualty Insurance Company**
**Danny L. Barlow**

**C. Shannon Hardy**
**Penny & Hardy**
**Post Office Box 2187**
**Lafayette, LA    70502-2187**
**(337) 231-1955**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**USAgencies Casualty Insurance Company**
**Danny L. Barlow**

AMY, Judge.

A police officer was injured when he came into contact with a damaged utility line while responding to a single-vehicle accident, in which the driver had damaged the pole supporting the utility line. The officer brought suit against the driver of the vehicle and his insurer, as well as the utility company. The trial court granted a summary judgment in favor of the driver of the vehicle and his insurer, dismissing the plaintiff's claims against them. For the following reasons, we reverse and remand for further proceedings.

### Factual and Procedural Background

On November 26, 2000, the plaintiff, Randy James Henry, a corporal with the DeQuincy Police Department, sustained the injuries which form the basis of the instant matter while responding to an automobile accident call. The essential facts leading up to Mr. Henry's injuries are not in dispute.

Sometime during the early morning hours of November 26, the pick-up truck that Danny Barlow was driving exited Louisiana Highway 12 in DeQuincy, Louisiana, and struck an electrical pole that provided power to a nearby funeral home. The impact sheared the pole at its base, although the tension in the utility lines prevented it from falling to the ground.

Corporal Henry was dispatched to the scene at approximately 5:00 a.m. to investigate the accident. He stated in his deposition that upon arriving on the scene, he noted that two utility lines which had connected two poles were sagging approximately a foot-and-a-half above the cab of the truck, and another utility line which connected to the funeral home had become disconnected and was resting on the ground. Corporal Henry confirmed that neither of the truck's two occupants were injured and warned the driver about the power lines. Mr. Barlow's father was called

to pick up Mr. Barlow and the other passenger, who was his brother. A tow truck was also called to the scene to remove the Barlow vehicle.

At some point thereafter, Corporal Scott Stream also arrived on the scene. The officers released Mr. Barlow and his brother to leave the scene with their father. The tow truck arrived and was able to pull the truck from underneath the sagging lines. The officers walked the area where the pick-up truck had been to remove any broken pieces of the vehicle from the ground. Corporal Henry stated in his deposition that Corporal Stream told him that he could leave and he (Corporal Stream) would stay on the scene and wait until a representative from the power company came to repair the utility lines. Corporal Stream stated in his deposition that as the men started to walk back toward their patrol cars, he heard an electrical "arcing sound" and turned around to see Corporal Henry lying unconscious on the ground.

Corporal Henry was taken to the hospital by ambulance, and then by helicopter to Galveston, Texas for treatment. On October 11, 2001, Corporal Henry brought suit[1] against Mr. Barlow and his automobile insurer, USAgencies Casualty Insurance Company, Inc. ("USAgencies"), and against CLECO Utility Group, Inc. ("CLECO"), as the owner and operator of the utility lines.

Thereafter, Mr. Barlow and USAgencies filed a Motion for Summary Judgment, alleging that Mr. Barlow's duty to use reasonable care in the operation and control of his vehicle did not extend "to protect an investigating officer who is injured while walking under a low hanging electrical line some forty or more minutes after the accident, after the defendant and his vehicle have been removed from the

---

[1] We note that Corporal Henry's children also asserted loss of consortium claims and his wife asserted a claim for loss of consortium and loss of wages as a result of having to discontinue her employment to care for her husband.

scene[.]" Mr. Barlow and USAgencies also asserted that the professional rescuer doctrine prohibited any recovery by the plaintiffs. Following a hearing on the matter, the trial court granted a summary judgment in favor of Mr. Barlow and USAgencies, dismissing all claims against them with prejudice.

CLECO appeals, asserting that the trial court erred in granting a summary judgment in favor of Mr. Barlow and USAgencies because Mr. Barlow was the legal cause of Mr. Henry's injuries.[2]

### Discussion

Mr. Barlow and USAgencies asserted in their memorandum in support of summary judgment that "Mr. Henry's injuries were not caused by the legal fault of the defendants, BARLOW and USAGENCIES." In support of the assertion, they suggested at trial and on appeal that a motorist's duty to use reasonable care in the control and operation of his vehicle does not encompass the risk that forty minutes after a single-vehicle accident, a police officer investigating the scene would suffer electrocution injuries while walking under low-hanging electrical lines after the motorist and vehicle had both been removed from the accident scene. Mr. Barlow and USAgencies also point out that Mr. Henry had acknowledged the lines and warned others that they were not hanging properly.

CLECO, however, alleges that Mr. Barlow breached his duty as a motorist to maintain proper control of his vehicle and created a "continuing hazard" by damaging the utility pole and live power lines. CLECO further asserts that the danger associated with striking a utility pole in an automobile accident, aside from immediate injury to vehicle occupants, is the risk of contact with the damaged high voltage lines.

_____

[2] The plaintiffs, who did not appeal in their own right, also filed an appellate brief, adopting in toto the brief filed on behalf of CLECO.

CLECO argues, then, that the plaintiff's electrocution as a result of contact with live power lines within an hour of the accident was within the scope of protection afforded by Mr. Barlow's duty to maintain control of his vehicle.

"An appellate court reviews summary judgments *de novo*, applying the same criteria as the district court in determining whether summary judgment is appropriate." *Colson v. Johnson*, 01-967, p. 1 (La.App. 3 Cir. 12/12/01), 801 So.2d 648, 649-50, *writ denied*, 02-103 (La. 3/22/02), 811 So.2d 939.  Louisiana Code of Civil Procedure Article 966 provides for summary judgment, stating, in relevant part:

> A. (1) The plaintiff or defendant in the principal or any incidental action, with or without supporting affidavits, may move for a summary judgment in his favor for all or part of the relief for which he has prayed. The plaintiff's motion may be made at any time after the answer has been filed.  The defendant's motion may be made at any time.
>
> (2) The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969.  The procedure is favored and shall be construed to accomplish these ends.
>
> . . . .
>
> C. (1) After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted.
>
> (2) The burden of proof remains with the movant.  However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense.  Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.

4

In reviewing the record, the appellate court must draw all reasonable inferences from it in the light most favorable to the non-movant. *Hines v. Garrett*, 04-806 (La. 6/25/04), 876 So.2d 764.

Louisiana Civil Code Article 2315 provides the basis for a cause of action in negligence by providing that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." Louisiana courts have traditionally applied a duty-risk analysis to determine the existence of delictual liability. *Siripanyo v. Allstate Indem. Co.*, 03-559 (La.App. 3 Cir. 12/23/03), 862 So.2d 1254, *writ denied*, 04-182 (La. 3/19/04), 869 So.2d 860. "Under this analysis the plaintiff must prove that the conduct in question was the cause-in-fact of the resulting harm, the defendant owed a duty of care to the plaintiff, the requisite duty was breached by the defendant and the risk of harm was within the scope of protection afforded by the duty breached." *Posecai v. Wal-Mart Stores, Inc.*, 99-1222, p. 4 (La. 11/30/99), 752 So.2d 762, 765. Each of the preceding inquiries must be answered affirmatively in order for a plaintiff to recover on a negligence theory. *Id*. Mr. Barlow and USAgencies sought summary judgment based on their assertion that the circumstances of Mr. Henry's injuries were not within the scope of protection of Mr. Barlow's duty as a motorist to use reasonable care in the operation and control of his vehicle.

"Regardless if stated in terms of proximate cause, legal cause, or duty, the scope of the duty inquiry is ultimately a question of policy as to whether the particular risk falls within the scope of the duty." *Roberts v. Benoit*, 605 So.2d 1032, 1044 (La.1991). In *Pardue v. AT&T Telephone Co.*, 01-762, p. 4 (La.App. 3 Cir.

5

10/31/01), 799 So.2d 710, 713, *writ denied*, 01-3167 (La. 2/8/02), 808 So.2d 352, this court stated the following regarding the scope of protection inquiry:

> As explained in *Todd v. State through Social Serv*., 96-3090, p. 6 (La.9/9/97); 699 So.2d 35, 38: " 'Cause' in legal cause demands an inquiry into whether a legal standard of care exists and requires delving into policies for and against extending the asserted legal standard of care to protect the particular plaintiff against the particular harm." Additionally, "a risk may not be found within the scope of a duty where the circumstances of that particular injury or that plaintiff could not be reasonably foreseen or anticipated, because there was no ease of association between that risk and the legal duty." *Id.* at p. 7; 39. While cause-in-fact determinations are factual in nature, the legal cause or scope of the duty determination is a legal one. *Id.*

"The scope of protection inquiry asks 'whether the enunciated rule or principle of law extends to or is intended to protect this plaintiff from this type of harm arising in this manner.'" *Faucheaux v. Terrebonne Consol. Gov't*, 615 So.2d 289, 293 (La.1993).

As a threshold issue, we must consider whether the defendant owed a duty to the plaintiff. *Lazard v. Foti*, 02-2888 (La. 10/21/03), 859 So.2d 656. It is well settled that an automobile driver has a duty to use reasonable care in the operation and control of the vehicle. *Johnson v. Safeway Ins*. Co., 98-920 (La.App. 3 Cir. 1/6/99), 741 So.3d 32. We also note that both CLECO and Mr. Barlow have cited the general duty established for drivers by La.R.S. 32:58, which states in relevant part: "Any person operating a motor vehicle on the public roads of this state shall drive in a careful and prudent manner, so as not to endanger the life, limb, or property of any person." In analyzing the parties' arguments concerning legal cause, then, we must consider whether Mr. Barlow's duty to operate his vehicle in a reasonable manner extended to protect Mr. Henry from his injuries in the manner in which he sustained them.

It is undisputed that Mr. Barlow's vehicle, for an unknown reason, left the roadway and damaged a utility pole and the power lines connected thereto. These damaged utility lines, which were still suspended but were hanging significantly lower than they had been originally, could clearly be found to present a risk of personal injury or property damage due to electric current until they were repaired. Further, it is arguably foreseeable that at least one police officer would respond to the scene of a single-vehicle accident which required that the damaged vehicle be towed away and energy plant representatives be sent to repair the damaged pole and lines. Therefore, we cannot conclude that as a matter of law, the plaintiffs would be unable to prove that the damages sustained were within the scope of the duty owed. Thus, summary judgment is inappropriate under the terms of La.Code Civ.P. art. 966, and we find that the trial court erred in granting a summary judgment in favor of Mr. Barlow and USAgencies on these grounds.

*Professional Rescuer's Doctrine*

Mr. Barlow and USAgencies also suggest, in support of their summary judgment motion and on appeal, that Mr. Henry was barred from recovery by the "Professional Rescuer's Doctrine." They assert that the downed, live power line was a "dependant" risk, as the automobile accident and damaged utility lines were "the very emergency that [Mr.] Henry secured upon arrival at the scene."

"The Professional Rescuer's Doctrine is a jurisprudential rule that essentially states that a professional rescuer, such as a fireman or a policeman, who is injured in the performance of his duties, 'assumes the risk' of such an injury and is not entitled to damages." *Gann v. Matthews*, 03-640, pp. 5-6 (La.App. 1 Cir. 2/23/04), 873 So.2d 701, 705, *writ denied*, 04-761 (La. 6/18/04), 876 So.2d 804. However, Louisiana

7

courts have recognized that professional rescuers do not assume the risk of all injury without recourse, and have recognized two exceptions. *Langlois v. Allied Chem. Corp.*, 249 So.2d 133 (La.1971).

> A professional rescuer may recover for an injury caused by a risk which is independent of the emergency or problem he has assumed the duty to remedy. *Langlois v. Allied Chemical Corporation*, 249 So.2d at 141; *Raziano v. Lincoln Property Company*, 520 So.2d 1213, 1217 (La.App. 5th Cir.1988). A risk is independent of the task, and the assumption of the risk rationale does not bar recovery, if the risk-generating object could pose the risk to the rescuer in the absence of the emergency or specific problem undertaken. *Worley, supra.*
>
> On the other hand, "dependant" risks arise from the very emergency that the professional rescuer was hired to remedy. The assumption rationale bars recovery from most dependant risks except when (1) the dependant risks encountered by the professional rescuer are so extraordinary that it cannot be said that the parties intended the rescuers to assume them, *Chinigo v. Geismar Marine, Inc.,* 512 So.2d 487, 491 (La.App. 1st Cir.), *writ denied*, 514 So.2d 457 (La.1987), or (2) the conduct of the defendant may be so blameworthy that tort recovery should be imposed for the purposes of punishment or deterrence. *Worley, supra; Sayes v. Pilgrim Manor Nursing Home, Inc.*, 536 So.2d 705, 710 (La.App. 3d Cir.1988); *Thompson v. Warehouse Corporation of America, Inc.*, 337 So.2d 572, 573 (La.App. 4th Cir.1976). Under the second exception to the professional rescuer's doctrine, the court in *Sayes*, *supra* found that in order to allow a professional rescuer recovery, the defendant's actions or lack of actions have to rise to the level of "recklessness or wanton negligence."

*Holloway v. Midland Risk Ins. Co.*, 33,026, pp. 4-5 (La.App. 2 Cir. 5/15/00), 759 So.2d 309, 313-14.

Before considering whether the risks to which the plaintiff was exposed in this case were dependant or independent of his duty as a police officer, or the level of "blameworthiness" in the defendant's conduct, we note the second circuit's treatment of the issue in *Worley v. Winston*, 550 So.2d 694 (La.App. 2 Cir.), *writ denied,* 551 So.2d 1342 (La.1989). In *Worley*, the trial court awarded a police officer damages for a broken finger joint, an injury which he sustained during the course of a lawful

arrest. The defendant asserted that the plaintiff was not entitled to such damages due to the Professional Rescuer's Doctrine. Although the second circuit noted that an officer "could expect a criminal to resist arrest[,]" and therefore "the risk of being injured while effecting an arrest is a dependant risk," the court also stated the following:

> While the professional rescuers rule, similar to the "fireman's rule," has traditionally been discussed in terms of assumption of risk, under current Louisiana tort theory the rule should, perhaps, be couched in terms of comparative fault or duty/risk. See *Murray v. Ramada Inns, Inc.*, 521 So.2d 1123 (La.1988). More precisely, the rule comes into play in determining the risks included within the scope of the defendant's duty and to whom the duty is owed. It might be said that a defendant's ordinary negligence or breach of duty does not encompass the risk of injury to a police officer or fireman responding in the line of duty to a situation created by such negligence or breach of duty. A defendant's particularly blameworthy conduct, especially intentional criminal conduct, does encompass the risk of injury to a policeman or fireman responding in the line of duty. Further, in the case of injury to an officer by someone resisting arrest, we have stated above that the duty is intended, at least in part, to protect the officer from injury while effecting the arrest in the line of duty. Where a duty is owed, as in this case, to a certain class of persons, recovery cannot be denied to a person of this class because of the very factor that makes the person a member of the class.

*Id*. at 697. Because the second circuit had already noted a statutory duty on the part of the defendant to submit peaceably to a lawful arrest, the court awarded the officer damages.

While we note that the instant matter is factually distinctive, we find the second circuit's analysis instructive in the present matter. As stated, according to La.Code Civ.P. art. 966(C), the movant must demonstrate entitlement to a summary judgment as a matter of law. Based on our review of the circumstances surrounding Mr. Henry's injuries above, we determined that we could not conclude as a matter of law that the damages he alleges were not within the scope of a duty owed by Mr. Barlow.

9

Similarly, we are unable to state as a matter of law that Mr. Henry's claims would be barred by the Professional Rescuer's Doctrine. Consequently, under the terms of La.Code Civ.P. art 966, summary judgment is inappropriate on these grounds as well.

## DECREE

For the foregoing reasons, the summary judgment entered in favor of the defendants, Danny L. Barlow and USAgencies, is reversed and the matter is remanded to the trial court for further proceedings. All costs of this matter are assigned to Danny L. Barlow and USAgencies.

**REVERSED AND REMANDED.**